**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AARON CAIN MCKNIGHT; BMP GLOBAL INVESTMENTS, LLC; BPM ASSET MANAGEMENT, LLC; SHERRY REBEKKA SIMS; KENNETH MILLER; FROST & MILLER, LLP; and HARMONY BROOK MCKNIGHT,<br><br>Defendants,<br><br>-and-<br><br>ACCELERATED VENTURE PARTNERS, LLC and TIMOTHY NEHER,<br><br>Relief Defendants. | § § § § § § § § § § § § § § § § § § § § § § | Case No. 3:23-cv-00641-L |

**DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER'S MOTION TO DISMISS THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT**

Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau
State Bar No. 24135506
sdeau@vedderprice.com
**VEDDER PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790
Joshua D. Nichols (pro hac vice forthcoming)
**VEDDER PRICE P.C.**
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 6

RELEVANT ALLEGATIONS ........ 8

I. McKnight's Fraud ........ 8

II. The F&M Defendants ........ 10

ARGUMENT ........ 12

I. The SEC's Complaint Must Allege a Plausible Entitlement to Relief, as Required by Federal Rules of Civil Procedure 12(b)(6) and 9(b) ........ 12

II. The SEC Has Not Plausibly Alleged that the F&M Defendants Aided and Abetted Any Unlawful Conduct Committed by McKnight ........ 13

A. The SEC Fails to Plead that the F&M Defendants Had Knowledge of McKnight's Violations of the Securities Laws ........ 14

B. The SEC Has Failed to Adequately Plead that the F&M Defendants Provided Substantial Assistance in Support of the Alleged HYIP Scheme ........ 18

III. The Complaint Should Be Dismissed with Prejudice ........ 22

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....12

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F. Supp.2d 533 (N.D. Tex. 2003)....21

*Ebert v. Gustin*,
No. 4:15-cv-00225-O, 2016 WL 11663146 (N.D. Tex. May 19, 2016)....13

*McKinney v. Irving Indep. Sch. Dist.*,
309 F.3d 308 (5th Cir. 2002)....22

*SEC v. Arbitrade Ltd.*,
No. 22-cv-23171-BLOOM, 2023 WL 2785015 (S.D. Fla. Apr. 5, 2023)....18

*SEC v. Carrillo Huettel LLP*,
No. 13 Civ. 1735 (GBD), 2017 WL 213067....21

*SEC v. Felton*,
No. 3:20-cv-0822-G, 2021 WL 2376722 (N.D. Tex. June 10, 2021)....13, 15, 20

*SEC v. Jackson*,
908 F. Supp. 2d 834 (S.D. Tex. 2012)....20

*SEC v. Milan Grp., Inc.*,
962 F. Supp. 2d 182 (D.D.C. 2013) (vacated in part on other grounds)....21

*SEC v. Montgomery*,
No. SA-20-CA-598-FB, 2021 WL 210749 (W.D. Tex. Jan. 20, 2021)....13, 15, 20

*SEC v. Morris*,
No. H-04-3096, 2005 WL 2000665 (S.D. Tex. Aug. 18, 2005)....12, 14, 15, 16, 17

*SEC v. Mudd*,
885 F. Supp. 2d 654 (S.D.N.Y. 2012)....18

*SEC v. Nutmeg Grp., LLC*,
162 F. Supp. 3d 754 (N.D. Ill. 2016)....14, 16, 17

*SEC v. Stack*,
No. 1:21-cv-00051-LY, 2021 WL 4777588 (W.D. Tex. Oct. 13, 2021) ........................ *passim*

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) ........................................................................13

*Warren v. Reserve Fund*,
728 F.2d 741 (5th Cir. 1984) ........................................................................16

*Williams v. WMX Tech., Inc.*,
112 F.3d 175 (5th Cir. 1997) ........................................................................13

*Woodward v. Metro Bank*,
522 F.2d 84 (5th Cir. 1975) ........................................................................14, 18

**Rules**

FED. R. CIV. P. 9(b) ........................................................................13, 14

FED. R. CIV. P. 12(b)(6) ........................................................................12, 14

**Statutes**

15 U.S.C. § 77q(a) ........................................................................6, 8

15 U.S.C. § 78j(b); 78t(e) ........................................................................6, 8, 13, 15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>AARON CAIN MCKNIGHT; BMP GLOBAL INVESTMENTS, LLC; BPM ASSET MANAGEMENT, LLC; SHERRY REBEKKA SIMS; KENNETH MILLER; FROST & MILLER, LLP; and HARMONY BROOK MCKNIGHT,<br><br>Defendants,<br><br>-and-<br><br>ACCELERATED VENTURE PARTNERS, LLC and TIMOTHY NEHER,<br><br>Relief Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:23-cv-00641-L |

**DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER'S MOTION TO DISMISS THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT**

TO THE HONORABLE SAM A. LINDSAY:

Defendants Frost & Miller, LLP ("F&M") and Kenneth Miller ("Miller") (collectively, the "F&M Defendants") submit this Motion to Dismiss the Complaint filed against them by the Securities and Exchange Commission (the "SEC") ("Compl. ¶ __").

## INTRODUCTION

The SEC seeks to eviscerate the well-established standards controlling aiding and abetting liability in an effort to hold the F&M Defendants liable for issues commonly faced by lawyers in private practice. But, the SEC's Complaint concedes its own faults—admitting that the F&M Defendants did not even know about the primary violation and failing to allege the F&M Defendants participated in the fraud. According to the SEC, Defendant Aaron Cain McKnight ("McKnight") defrauded investors out of more than $8.4 million through three separate schemes: (1) the HYIP Scheme; (2) the RIA Scheme; and (3) the PPE Scheme. Compl. ¶ 31. The F&M Defendants are alleged to have aided and abetted McKnight ***only*** in the HYIP[1] Scheme, through which McKnight allegedly raised $2 million. Compl., *passim*. The sole basis for the SEC's claims against the F&M Defendants as to the HYIP Scheme stems from F&M's handling of four wire transfer deposits that McKnight, with the assistance of Promoter A, caused to be made into F&M's bank accounts between April 2018 and August 2018 and which McKnight falsely advised the F&M Defendants was under his custody and control.[2] Based on these deficient allegations, the F&M Defendants are alleged to have aided and abetted McKnight's violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a) (Compl. ¶ 144) and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b). Compl. ¶ 147.

To establish aiding and abetting liability, the SEC must demonstrate (in addition to a primary violation of the federal securities laws based on McKnight's alleged fraudulent scheme) that the F&M Defendants (1) had a general awareness of McKnight's fraud and of their role in

[1] HYIP is the SEC's acronym for a "high-yield investment trading program." Compl. ¶ 2.

[2] This is a fourteen week period, not a six week period as the Complaint erroneously calculates. Compl. ¶¶ 89-90.

furthering it, and (2) participated in McKnight's fraud as something they wished to bring about, and sought by their actions to make McKnight's scheme succeed. The Complaint fails on both fronts, and should be dismissed as to the F&M Defendants.

First, the Complaint fails to plead facts showing that the F&M Defendants had knowledge of McKnight's alleged primary violation. In fact, the SEC expressly concedes that the F&M Defendants did ***not*** have any knowledge of the HYIP scheme, that McKnight used F&M's name without its knowledge or consent to help lure investors into his scheme, and that McKnight ***lied directly to Miller*** about the circumstances surrounding the payments in and out of F&M's account. Compl. ¶ 86. Instead, the SEC—with the benefit of hindsight—alleges that the F&M Defendants recklessly disregarded the existence of certain limited purported "red flags." The nature of the alleged red flags highlights the baselessness of the SEC's claims. As an initial matter, they consist of conclusory, unsupported statements. Further, as is demonstrated herein, the red flags, standing alone, are baseless and would not give rise to concern; not responding to them the way the SEC would have liked through hindsight does not constitute an extreme departure from the standards of ordinary care by the F&M Defendants. When viewed in the context in which they arose, the alleged red flags are even less compelling. The SEC alleges that the F&M Defendants had no knowledge of McKnight's scheme; they were merely following a client's instructions as to the disposition of money that he purported to have custody over. The SEC itself admits that Miller discussed the relevant wire transfers with McKnight and that McKnight lied to him in response. Compl. ¶¶ 85, 86. Ignoring or failing to recognize these purported "red flags" does not satisfy the SEC's pleading standard.

Second, the SEC has not pled, because it cannot, that the F&M Defendants participated in McKnight's alleged fraud as something they wished to bring about, and that they sought by their

actions to make McKnight's scheme succeed. All the SEC offers are the allegations that McKnight lied to the F&M Defendants about the nature of the funds deposited into F&M's operating account, told the F&M Defendants that the funds were under his custody, and thereby deceived them into disbursing the funds in accordance with his instructions. This does not come close to satisfying the stringent and heightened pleading requirements for an aiding and abetting claim.

Consequently, Counts 5 and 6 of the Complaint—which charge the F&M Defendants with aiding and abetting McKnight's violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, respectively—should be dismissed with prejudice as to the F&M Defendants.

## RELEVANT ALLEGATIONS[3]

### I. McKnight's Fraud

The SEC alleges that McKnight concocted and executed a "high-yield investment trading program" scheme ("HYIP Scheme") by posing as an investment professional running several investment entities collectively called the "CGE Group."[4] Compl. ¶¶ 2, 33. According to the SEC, McKnight ran the HYIP Scheme from March 2018 to April 2019, with investors committing their principal investment for a number of months on the promise that they would be paid monthly returns ranging from 40 to 100 percent of their initial investment each month for ten to twelve months. *Id.* ¶ 32. The SEC alleges that McKnight promised his investors that their first payment would arrive within 30 days of their deposit. *Id.* McKnight allegedly represented that these returns would be generated by his "trading program." *Id.*

---

[3] All facts included herein that are taken from the complaint are accepted as true for purposes of this motion only.
[4] The Complaint alleges multiple different schemes spanning from March 2018 to September 2021, including the "HYIP Scheme," the "RIA Scheme" and the "PPE Scheme." Compl. ¶¶ 2, 4, 5. This motion focuses on the HYIP Scheme, since that is the scheme that the SEC alleges the F&M Defendants aided and abetted. Additional facts regarding the RIA Scheme and PPE Scheme are outlined in the Complaint.

McKnight also recruited two other individuals with no financial industry experience to solicit investors for his scheme. *Id.* ¶ 33. These individuals included Defendant Sherry Sims and Promoter A. *Id.* Sims and Promoter A allegedly repeated McKnight's investment pitch, which centered on the notion that investor deposits would be pooled to form larger investments than any of the individuals could make for themselves. *Id.* ¶ 34. Sims and Promoter A allegedly told investors that because of the increased size of these pooled investments, the investors qualified for investment opportunities normally reserved for wealthier and more sophisticated investors, including investments with the European Central Bank. *Id.* In addition, Sims controlled an entity named the SubGallagher Investment Trust ("SGIT"),[5] which the SEC alleges falsely claimed to have more than $100 million in financial assets backing the surety bonds it eventually issued to purportedly guarantee performance of the agreements into which the investors entered, when it really had no assets. Compl. ¶¶ at 29, 95.

McKnight and his co-conspirators, through their deceptive promises to investors, successfully convinced individual investors to deposit amounts ranging from $25,000 to $1 million into McKnight's sham investment firm, CGE Group. *Id.* ¶ 34. McKnight accomplished this by, among other things, creating a false and misleading website for CGE Group that touted CGE Group's (false) credentials and expertise, lying in CGE Group's promotional materials to make it appear as if CGE Group was a legitimate investment firm with experienced financial services professionals, and ultimately persuading investors that McKnight had access to lucrative investment opportunities. *Id.* ¶¶ 36-39. McKnight and his co-conspirators also convinced some investors to enter into agreements with "Heaven's Way Investment Trust" ("HWIT"), which stated that the investors agreed to allow HWIT to negotiate and structure various financial transactions

---

[5] SGIT is not named as a Defendant in the SEC's Complaint.

that would yield a monthly return of 20-70% of their investment. *Id.* ¶¶ 75-76. Pursuant to the agreements, Promoter A, who controlled HWIT, instructed and caused HWIT's investors to deposit "their investment money 'into an Escrow Account with escrow agent Frost & Miller, LLP.'" *Id.* ¶¶ 28, 77, 78. The four resulting wire transfers are the subject of the SEC's claims against the F&M Defendants. *Id.* ¶¶ 28, 90. The agreements also stated that HWIT would arrange and pay for SGIT surety bonds guaranteeing performance of the agreements and protecting the funds invested from "theft and/or fraud" while they were in the possession of HWIT and F&M. *Id.* ¶¶ 29, 77. HWIT would then enter into secondary agreements with another sham organization owned by McKnight—CGAM—which would pay HWIT monthly returns of 100% per month. *Id.* ¶ 78. The HWIT investors never saw these secondary agreements, however. *Id.*

In reality, McKnight possessed none of this experience, and instead of investing the funds received from the investors he allegedly deceived, McKnight misappropriated them for his personal use. *Id.* ¶ 40. He also used some of the payments from investors to make payments to other investors. *Id.* Apart from two payments to the first HWIT investor, no HWIT investor was ever repaid his, her, or its principal investment amount. *Id.* ¶¶ 82.

## II. <u>The F&M Defendants</u>

F&M is a law firm with two attorneys—Kenneth Miller and Gregory Frost. Compl. ¶ 19. Miller is a member of the New York state bar and has been practicing law for more than 46 years. *Id*. ¶ 18. For years, McKnight was a client of the F&M Defendants across multiple engagements, which represented him in both litigation and transactional matters. *Id.* ¶ 84. McKnight had not yet

paid all of his outstanding legal fees owed to F&M at the time he was perpetrating the alleged scheme described in the Complaint. *Id.* ¶ 84.

As part of his scheme, and to create the false impression that he did not control investor funds, McKnight instructed some investors to deposit their investment funds into an attorney escrow account through F&M. *Id.* ¶ 41. McKnight did this despite having no agreed arrangement with F&M to escrow the funds and without disclosing this arrangement to F&M. *Id.* ¶ 41. Unbeknownst to the F&M Defendants, as part of his scheme, McKnight had utilized F&M's name in connection with his solicitation of investors. *Id.* ¶ 86. The F&M Defendants were unaware that McKnight's agreements with the HWIT investors provided for the investors to deposit their money into an escrow account with F&M, after which HWIT would use the investor funds to purchase surety bonds to "protect the investments." *Id.* ¶ 77. The agreements identified the account number for F&M's operating account, not the account number for the IOLA (escrow) account. *Id.* ¶ 86.

The F&M Defendants are not alleged to have played any role in the transactions giving rise to the investments solicited by McKnight. *Id.* They did not know about McKnight's alleged scheme. *Id.* They did not have communications with McKnight's investors. *Id.* ¶ 87. They did not see any of the underlying agreements between HWIT and its investors. *Id.*

In April 2018, McKnight informed F&M that money would be wired into F&M's escrow accounts, that it would remain under McKnight's control and discretion, and that he would provide instructions for the disposition of that money. *Id.* ¶ 85. However, he lied to Miller about this, telling him there was no escrow arrangement affecting the funds and that McKnight had the sole authority to direct the disbursement of the funds. *Id.* ¶ 85. McKnight directed Miller that some of the money would be used to pay legal fees still owed to F&M. *Id.* ¶ 87.

F&M followed McKnight's instructions regarding disposition of the funds that he represented were under his discretionary control. *Id.* ¶¶ 88–90. The four transactions at issue occurred over a four-month period in 2018.[6] *Id.* ¶ 90. When his scheme began to unravel, McKnight sought to deflect attention for misappropriating investor assets by telling his investors that the F&M Defendants were at fault for the loss of their investments. *Id.* ¶ 73.

## ARGUMENT

### I. The SEC's Complaint Must Allege a Plausible Entitlement to Relief, as Required by Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Under Federal Rule of Civil Procedure 12(b)(6), the SEC's Complaint against the F&M Defendants must be dismissed if its allegations, when accepted as true, cannot be supported by any set of facts that would entitle the SEC to the relief it seeks. *See, e.g., SEC v. Morris,* No. H-04-3096, 2005 WL 2000665, at *9-10 (S.D. Tex. Aug. 18, 2005) (dismissing aiding and abetting claim where SEC did not allege any facts showing that the defendant knew he was participating in a fraudulent scheme). In other words, the SEC's allegations must consist of more than a formulaic recitation of the elements of a cause of action, but instead must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court must accept all well-pleaded facts as true, "a court need not 'accept as true conclusory allegations or unwarranted deductions of fact.'" *Morris,* 2005 WL 2000665, at *3 (internal citations omitted).

[6] The Complaint does not allege that F&M's handling of these transactions were outside the scope of F&M's ordinary course of business.

Fraud allegations, like the ones permeating the SEC's Complaint, also must be pled with particularity. Fed. R. Civ. P. 9(b). The Fifth Circuit has interpreted Rule 9(b) to require a plaintiff to plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (alteration in original). "The particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman*, 14 F.3d at 1067-68 (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). Rule 9(b)'s heightened pleading standard applies to aiding and abetting claims. *See, e.g.*, *Ebert v. Gustin*, No. 4:15-cv-00225-O, 2016 WL 11663146, at *10 (N.D. Tex. May 19, 2016).

## II. <u>**The SEC Has Not Plausibly Alleged that the F&M Defendants Aided and Abetted Any Unlawful Conduct Committed by McKnight.**</u>

The SEC's two claims against the F&M Defendants are for allegedly aiding and abetting fraud perpetrated by McKnight. To state a claim for aiding and abetting, the SEC must plead three distinct elements: (i) McKnight committed an underlying securities violation; (ii) the F&M Defendants had knowledge of McKnight's violation and of their role in furthering it; and (iii) the F&M Defendants knowingly rendered "substantial assistance" to McKnight in furtherance of his violation. *See SEC v. Stack*, No. 1:21-cv-00051-LY, 2021 WL 4777588, at *6 (W.D. Tex. Oct. 13, 2021); *SEC v. Felton*, No. 3:20-cv-0822-G, 2021 WL 2376722, at *12 (N.D. Tex. June 10, 2021); *SEC v. Montgomery*, No. SA-20-CA-598-FB, 2021 WL 210749, at *4 (W.D. Tex. Jan. 20, 2021).[7]

---

[7] In 2010, Congress amended the securities laws through the Dodd-Frank Wall Street Reform and Consumer Protection Act, which permitted a finding of aiding and abetting liability with a showing that a defendant "knowingly ***or recklessly*** provides substantial assistance to another person" to commit a violation of the securities laws. *See* 15 U.S.C. § 78t(e) (emphasis added). Here, however, the SEC alleges that, *e.g.*, the F&M Defendants "***knowingly*** imbued McKnight's scheme with an air of legitimacy and gave investors a false sense of security, thereby furthering McKnight's deception." Compl. ¶ 3 (emphasis added). However, as shown here, the SEC fails to state a claim whether it relies on knowledge ***or*** recklessness. And indeed concedes the F&M Defendants had no knowledge.

Even assuming, *arguendo*, that the SEC satisfies the first element of its claims against the F&M Defendants,[8] it fails to satisfy the second and third elements. The Complaint (1) does not plausibly allege that the F&M Defendants had knowledge of McKnight's violation and (2) does not plausibly allege that the F&M Defendants offered "substantial assistance" to McKnight to further his scheme.

**A. <u>The SEC Fails to Plead that the F&M Defendants Had Knowledge of McKnight's Violations of the Securities Laws.</u>**

To satisfy the second element of an aiding and abetting violation, the SEC must adequately allege the F&M Defendants had a "general awareness that [their] role was part of an overall activity that is improper." *Woodward v. Metro Bank*, 522 F.2d 84, 95 (5th Cir. 1975); *see also Stack*, 2021 WL 47777588, at *7. "If the alleged aider and abettor conducts what appears to be a transaction in the ordinary course of his business, more evidence of his complicity is essential." *SEC v. Morris*, 2005 WL 2000665, at *8 (quoting *Woodward*, 522 F.2d at 95). Importantly, "knowledge or awareness of the [underlying] conduct that turns out to be improper or illegal is not the same as knowledge or awareness of the conduct's impropriety or illegality. . . . [and] [t]he latter is what the law requires." *SEC v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 783 (N.D. Ill. 2016). Even though recklessness may be sufficient to satisfy this element, the "bar remains high," and "inexcusably negligent" conduct does not satisfy this element. *Id.*

Here, the SEC fails abjectly to allege knowledge on the part of the F&M Defendants in a manner required by Federal Rules of Civil Procedure 9(b) and 12(b)(6). Its conclusory allegation that the F&M Defendants "knowingly imbued McKnight's scheme with an air of legitimacy and gave investors a false sense of security, thereby further[ing] McKnight's deception" is proven false

[8] The F&M Defendants assume for purposes of this motion only that the SEC has satisfactorily pleaded the first element.

by its own factual allegations, which admit an ***absence*** of knowledge on the F&M Defendants' part.[9] For example, the SEC admits that the F&M Defendants "***knew nothing*** about the circumstances under which investors were sending funds directly to their law firm," that the F&M Defendants did not know that McKnight was using their firm's name as escrow agent to solicit investments, and that "Miller and F&M ***did not work on any aspect of any transaction*** giving rise to [McKnight's] investments." Compl. ¶ 86 (emphasis added). The SEC also acknowledges that ***McKnight lied to Miller*** about what he was asking of the F&M Defendants, falsely telling Miller that there was no escrow arrangement affecting the funds. *Id.* ¶ 85.

The Complaint does not—because it cannot—allege that the F&M Defendants knew, or even had any awareness whatsoever, that McKnight was perpetrating a fraud. This sits in stark contrast to the allegations regarding the second element of an aiding and abetting claim in which the SEC has survived motions to dismiss within the Fifth Circuit, post-Dodd-Frank. *See, e.g.*, *Stack*, 2021 WL 4777588, at *7-8 (holding that defendant had knowledge where he reviewed, revised, approved and issued press releases containing false and misleading statements about a shell corporation, and where he served as the president and CEO of that corporation); *SEC v. Felton*, No. 3:20-cv-0822-G, 2021 WL 2376722, (N.D. Tex. June 10, 2021) (holding that defendant had the requisite knowledge where he helped to artificially inflate corporate revenue numbers by marking as complete various customer orders while knowing that the orders had not been shipped and would not be shipped until the following quarter, where he enlisted the assistance of others in concealing the nature of the orders, and where he knew the corporation would file reports with inflated revenues based on those actions); *Montgomery*, 2021 WL 210749, at *5 (co-

---

[9] *See, e.g.*, *Morris*, 2005 WL 2000665, at *3 ("a court need not 'accept as true conclusory allegations or unwarranted deductions of fact'" (internal quotations omitted)).

defendants had knowledge of the primary violator's scheme to defraud investors in oil and gas projects where the co-defendants knew they were providing false information to the primary violator and knew that the primary violator was using that information to solicit investors).[10] Each case illustrates the knowledge and participation requirements, which substantially differ from the SEC's Complaint in the instant case.

The SEC's apparent attempt to satisfy the second element of its claim by alleging that the F&M Defendants recklessly disregarded "red flags" fails to meet the requisite pleading standard and is nothing more than subjective conjecture to imply that the F&M Defendants should have known about and were thus participating in McKnight's fraudulent scheme. Compl. ¶¶ 91, 93. Recklessness can be found where an aider and abettor should be alerted by "red flags" that signify that the primary violator has violated the securities laws. *See SEC v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 784-85 (N.D. Ill. 2016). Courts have emphasized that "red flags" must be "suspicious events creating reasons for doubt," and that recklessness will not be found absent such circumstances. *Morris*, 2005 WL 2000665, at *9 (internal quotations omitted). The red flags identified by the SEC highlight the baselessness of its claims against the F&M Defendants.[11] The

---

[10] Some courts have also considered a defendant's motive (or lack thereof) in determining whether or not the defendant had the appropriate knowledge of the violation. *See, e.g., Warren v. Reserve Fund*, 728 F.2d 741, 746-47 (5th Cir. 1984) (affirming dismissal of claim under Section 10(b) of the Securities Exchange Act and considering the fact that the defendant fund had no motive for misleading investors). Here, the SEC fails to allege any facts suggesting why the F&M Defendants would have had any motive to assist McKnight. Miller is a 72-year-old attorney with decades of hard-earned professional reputational capital and the SEC itself refers to F&M as a reputable law firm. Compl. ¶¶ 18, 86. It is unclear what motivation Miller would have had to jeopardize his and his law firm's reputation by assisting McKnight in violating the federal securities laws.

[11] In addition to being a microcosm of the SEC's overreach in bringing the instant claims against the F&M Defendants, these alleged red flags—if found sufficient to demonstrate that the F&M Defendants had a "general awareness" of McKnight's fraud—would have significant ramifications on the legal practice, especially for a two-person firm such as F&M. Taken to their logical conclusion, these purported red flags would impair the ability of persons to obtain counsel and would impose unreasonable standards of scrutiny on attorneys whose clients had the following completely reasonable and common characteristics: they were a party to a corporate transaction that did not close; they have not yet finished paying their legal fees; they experienced an increase in assets at their disposal; they were associated in some way with entities not named after themselves; they are associated with different entities that have "similar" names; and they are associated in some way with an entity that a lawyer believes was poorly named. Here, Miller did not know of the Agreements or the identity or existence of the parties to the Agreements. *See* Compl. ¶ 86. Miller

SEC attempts to satisfy the second element by noting that: (a) the transactions on which the F&M Defendants had previously represented McKnight had not closed; (b) McKnight had not yet finished paying his bills from past representations by the F&M Defendants; (c) McKnight "suddenly" had money at his disposal;[12] (d) the F&M Defendants were aware that McKnight had been incarcerated for drug charges long before he had a relationship with them; (e) McKnight was not mentioned by name in the wire transfers at issue;[13] (f) the name of an entity sending money into F&M's account and the name of an entity receiving money out of F&M's account "were very similar";[14] and (g) two of the payments that McKnight instructed the F&M Defendants to make were to entity called "Boiler Room Holdings" which "Miller conceded was a bad name for an investment company."[15] Compl. ¶ 91.

Finally, the purported "red flags" the SEC alleges are not the kinds of obvious indicators of wrongdoing that have been found sufficient for aiding and abetting liability. *See, e.g., Nutmeg*, 162 F. Supp. 3d at 784-85 (holding that the SEC failed to allege that the defendants acted with general awareness or recklessness where the SEC only alleged that the defendants failed to stop

---

contacted his client, McKnight, who lied by telling him that these were not escrow funds and that he had complete control and discretion over the funds. *Id*. ¶ 85.

[12] A party's track record in business is not a legitimate reason to turn away a client. It is also not unusual for corporate clients to incur six-figure legal bills and take time to pay them down, or for a client to come into money (*e.g.*, once financing for a project is secured).

[13] This allegation ignores the allegation elsewhere in the Complaint that the F&M Defendants had no knowledge of the agreements pertaining to the funds, so they therefore had no basis for knowing whose names should have been on the confirmation notices. *See* Compl. ¶ 86.

[14] Failure of an attorney to identify a similarity in an account name or number does not constitute recklessness, nor does the SEC allege any facts supporting the conclusion that—despite not having any knowledge of the purported agreement(s) between McKnight and his investors—the F&M Defendants had no reason to believe the transactions were connected.

[15] For the SEC to suggest that the name "Boiler Room Holdings" should have raised the F&M Defendants' suspicions that a fraud was occurring is a sign of how weak the SEC's claims are. Attorneys do not have a duty to investigate the names of entities affiliated with their clients, and the fact that an attorney thinks that an entity does not have a good name does not subject that attorney to liability for aiding and abetting an intentional fraud. (Moreover, even if the name of the entity mattered—which it does not—the term "boiler room" could just as easily refer to a room with boilers, and the notion that Miller should have inferred that someone perpetrating a fraud would name a related entity after a type of fraud is absurd.)

the primary violations and failed to disclose those violations because the defendants were not aware that any violations had actually occurred); *Morris*, 2005 WL 2000665, at *9-10 (holding that defendant was not reckless and did not ignore any obvious red flags or suspicious events where the defendant reviewed and signed public filings the SEC alleged were misleading and knowingly failed to disclose a change in accounting practices in the public filings); *see also SEC v. Arbitrade Ltd.*, No. 22-cv-23171-BLOOM, 2023 WL 2785015, at *9-10 (S.D. Fla. Apr. 5, 2023) (holding that SEC had plausibly alleged that individual had "general awareness" of his participation in an improper activity where he held himself out as the CEO of the company in question and reviewed false press releases before they were issued, ignored signs that a billion-dollar gold transaction was fraudulent where it was memorialized, in part, by a single-page document purporting to transfer title in gold to the company but was replete with errors and did not even contain the agreeing parties' names). As these cases indicate, Miller did not ignore obvious red flags by reviewing clearly erroneous documents or by failing to report violations, nor did he actively participate in McKnight's scheme by lying about McKnight's credibility, making false representations in public filings or to investors, or taking any other actions to suggest that he was aware that what McKnight was doing was fraudulent.

### B. The SEC Has Failed to Adequately Plead that the F&M Defendants Provided Substantial Assistance in Support of the Alleged HYIP Scheme.

The SEC also fails to sufficiently allege that the F&M Defendants knowingly provided substantial assistance to McKnight in the commission of the violation. To demonstrate substantial assistance, the SEC must show that the defendant "in some sort associated himself with the venture, that he participated in it as something that he wished to bring about, and that he sought by his action to make it succeed." *Stack*, 2021 WL 4777588, at *7 (quoting *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012)). In other words, a defendant must "'consciously assist[] the

commission of the specific crime in some active way.'" *SEC v. Mudd*, 885 F. Supp. 2d 654, 670-71 (S.D.N.Y. 2012) (internal citations omitted). In all cases, "assistance must be substantial before liability can be imposed . . . ." *Woodward*, 522 F.2d at 97.

Here, the SEC's ***only*** allegation of "assistance" to McKnight's alleged fraud provided by the F&M Defendants is that they—an attorney and a law firm—followed a firm client's instructions to accept and disburse assets over which the client claimed discretion. Compl. ¶¶ 84–93. As demonstrated above, the SEC fails to allege that the F&M Defendants knew of McKnight's fraudulent scheme (in fact, the Complaint alleges that the F&M Defendants *did not* know of the fraudulent scheme and that McKnight lied to Miller to convince Miller to receive and disburse the funds from the F&M account). *See supra* at Section II(A).

Further, the funds from the wire transfers at issue wound up in F&M's operating account solely because of the fraudulent conduct perpetrated by HWIT, Promoter A, and McKnight, and the lies McKnight told to Miller regarding the funds, not any act attributed to the F&M Defendants. Compl. ¶¶ 34, 41, 77, 85. Instead, the SEC relies on allegations that the F&M Defendants failed to identify and act on purported red flags. *Id.* ¶ 91. The SEC wholly fails to allege that the F&M Defendants participated in McKnight's fraud as "something they wished to bring about" and that they "sought to make it succeed." In fact, the SEC's Complaint reveals that it was McKnight—and McKnight alone—who lied to the F&M Defendants about his use of their firm account and caused the account to be used as part of his fraud. *See, e.g., id.* ¶¶ 84 ("***McKnight directed*** that certain investor deposits into his HYIP Scheme be funneled through . . . Frost & Miller"); 85 ("***McKnight also falsely told Miller*** that there was no escrow arrangement affecting the funds."); 89 ("***McKnight . . . provided the coordinates for the F&M operating account.***"); and 92

("***McKnight made at least four Ponzi payments*** using the HWIT Investors' funds deposited into the F&M accounts.") (emphasis added).

The allegations against the F&M Defendants are vastly different than those in which district courts within the Fifth Circuit have found the SEC to have sufficiently alleged "substantial assistance." For example, in *Stack*, the defendant was the CEO, president, treasurer, secretary and director of a shell corporation that raised money from investors by knowingly making and circulating materially false and misleading statements about the corporation. *Stack*, 2021 WL 4777588, at *1-2 (W.D. Tex. Oct. 13, 2021). The court found that the defendant had provided "substantial assistance" in furtherance of the primary perpetrator's securities violations because the defendant opened bank accounts where investors would send their money, reviewed and approved false and misleading documents, made materially false and misleading statements in communications to investors, and served as the signatory on bank accounts that wired funds to the primary perpetrator. *Id.* at *8.

Similarly, in *SEC v. Felton*, the SEC alleged that the defendant helped his employer to artificially inflate its revenues for one quarter by more than $3.3 million. No. 3:20-cv-0822-G, 2021 WL 2376722, at *1 (N.D. Tex. June 10, 2021). The defendant, who was the Senior Vice President of Supply Chain at the company, helped others to facilitate the revenue inflation by affirmatively marking orders as complete in the company's internal records when he knew that the orders would not be complete until the following quarter, by directing a third-party warehouse to relocate unshipped orders to incorrectly calculate the company's inventory, and by generally concealing the fact that the orders were not, in fact, complete. *Id.* at *10; *see also, e.g.*, *Montgomery*, 2021 WL 210749, at *4-5 (holding that defendant provided substantial assistance by making material misrepresentations and omissions to investors in a fraudulent oil and gas scheme

during phone calls and lease tours to potential investors, as well as by creating deceptive promotional videos); *SEC v. Jackson*, 908 F. Supp. 2d 834, 863-64 (S.D. Tex. 2012) (finding that the defendant provided "substantial assistance" to furthering securities violation by repeatedly approving fees to customers despite knowing that they were associated with false paperwork and ensuring that the customs agent was paid his fee to ensure that bribes reached foreign officials).

The allegations against the F&M Defendants are also vastly different than those in which the SEC has successfully stated aiding and abetting claims against attorneys. *See, e.g.*, *SEC v. Carrillo Huettel LLP*, No. 13 Civ. 1735 (GBD), 2017 WL 213067 (holding that law firm's motion to dismiss aiding and abetting claim was appropriately denied where the lawyer and law firm drafted documents knowing that they contained false or misleading statements to further a scheme to falsely inflate the price of shares); *SEC v. Milan Grp., Inc.*, 962 F. Supp. 2d 182, 196-202 (D.D.C. 2013) (vacated in part on other grounds) (holding that, at minimum, the SEC had established aiding and abetting liability against the principal of a law firm where she actively assisted a fraudster in soliciting investors by misrepresenting her relationship with the fraudster to lend credibility to his investment scheme, signed "client representation" letters with those sending money to the firm's account and allowed a portion of the funds to be sent back to her).

The SEC does not, and cannot, come close to satisfying this element and its claims against the F&M Defendants must be dismissed.

## III. <u>The Complaint Should Be Dismissed with Prejudice.</u>

For the reasons set forth herein, the SEC does not and cannot adduce facts supporting an aiding and abetting claim against the F&M Defendants. Therefore, the Complaint should be dismissed with prejudice.

While it is within the court's discretion to allow the amendment of pleadings, courts can and do decline to allow parties to amend where amendments would be futile and would unnecessarily and unduly delay the proceedings. *See In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp.2d 533, 566-67 (N.D. Tex. 2003) (declining to allow plaintiffs to amend the complaint because of the numerous deficiencies in the complaint that could not be cured, including the plaintiffs' failure to adequately plead scienter); *see also McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs failed to furnish a proposed amended complaint and where the court concluded that the plaintiffs could not adequately allege an element of their claim, so allowing them to amend would "do nothing but prolong the inevitable" (internal citations omitted)).

Allowing the SEC to amend its Complaint would be futile and would unnecessarily delay these proceedings. The SEC alleges that the F&M Defendants aided and abetted monetary transactions that occurred over a four-month span in 2018—nearly five years ago. Since that time, as the Complaint makes clear, and despite having obtained extensive "discovery" through its multi-year investigation before filing its Complaint, the SEC has not alleged any facts from which it can reasonably be inferred that the F&M Defendants' conduct satisfied the second and third elements of an aiding and abetting claim. The SEC cannot cure the defects in its pleading. After five years, it is unable to allege the basic facts required to state a plausible aiding and abetting claim against

the F&M Defendants. Therefore, amendment should not be permitted under these circumstances, and the Complaint should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Defendants Frost & Miller, LLP and Kenneth Miller respectfully request that the Court grant their motion to dismiss the Complaint and dismiss, with prejudice, Counts 5 and 6 as to the F&M Defendants.

Respectfully submitted,

Dated: June 16, 2023

*/s/ Jeffrey J. Ansley*

Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau
State Bar No. 24135506
sdeau@vedderprice.com

**VEDDER PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469-895-4870 – Telephone
469-895-4802 – Facsimile

Joshua D. Nichols (pro hac vice forthcoming)

**VEDDER PRICE P.C.**
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601

**ATTORNEYS FOR DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served electronically to all counsel of record on the 16th day of June, 2023, *via* the Court's CM/ECF system.

*/s/ Jeffrey J. Ansley*
Jeffrey J. Ansley