# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 3:23-cv-00641-L |
| AARON CAIN MCKNIGHT; BMP GLOBAL INVESTMENTS, LLC; BPM ASSET MANAGEMENT, LLC; SHERRY REBEKKA SIMS; KENNETH MILLER; FROST & MILLER, LLP; and HARMONY BROOK MCKNIGHT, | § § § § § § § § § | |
| Defendants, | § § | |
| -and- | § § | |
| ACCELERATED VENTURE PARTNERS, LLC and TIMOTHY NEHER, | § § § § | |
| Relief Defendants. | § § | |

## FROST & MILLER, LLP AND KENNETH MILLER'S REPLY
## IN SUPPORT OF MOTION TO DISMISS

Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau
State Bar No. 24135506
sdeau@vedderprice.com
**VEDDER PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790

## INTRODUCTION

The Securities and Exchange Commission's ("SEC") response does little more than restate the unsupported, conclusory, and deficient allegations that permeate its Complaint. Further, it incorrectly asserts that Kenneth Miller and Frost & Miller, LLP's ("F&M Defendants") motion relies on an outdated liability standard—despite its reliance on many of the same pre-Dodd-Frank cases. It also misleadingly characterizes this case as pending "for a matter of months," despite conduct that occurred over five years ago and a years-long SEC investigation which included extensive sworn testimony and document production before filing the Complaint. Finally, the SEC incessantly contradicts itself. It simultaneously argues the F&M Defendants caused investor reliance by lending their firm's legitimacy to the alleged scheme, while also pleading that they lacked knowledge of or participation in the very scheme they are charged with furthering—one of many impossible reconciliations.

The SEC's response does not, because it cannot, cure the deficiencies in its Complaint or transform its myriad legal conclusions and speculative allegations into facts sufficient to meet its high pleading standard. Neither its response nor Complaint allege facts that could plausibly support its contention that the F&M Defendants knew of the real perpetrator's—Aaron Cain McKnight's ("McKnight")—scheme or that they knowingly provided "substantial assistance" in furtherance of that scheme. The Complaint should be dismissed with prejudice.

## ARGUMENT

**I.     The F&M Defendants Correctly Identified the Aiding and Abetting Standard.**

The parties agree on the three distinct elements the SEC must plead for aiding and abetting liability to attach to the F&M Defendants: (1) the primary party committed a securities violation; (2) the aiding and abetting party had a "general awareness" of his role in the primary party's

violation; and (3) that party knowingly or recklessly provided "substantial assistance" in furtherance of the violation. *See, e.g.*, *SEC v. Stack*, No. 1:21-cv-00051-LY, 2021 WL 4777588, at *7–8 (W.D. Tex. Oct. 13, 2021). The F&M Defendants do not dispute—and, indeed, acknowledged in their motion—that the Dodd-Frank Act added "recklessly" to Section 20(e) of the Securities Exchange Act of 1934.

However, inclusion of "recklessly" in the Exchange Act does not obviate the SEC's obligation to plead facts sufficient to establish conscious awareness.[1] As the SEC must acknowledge, based on the cases it cites, some level of knowledge or conscious awareness is required of the F&M Defendants, notwithstanding the fact that aiding and abetting liability may be imposed on a person who "knowingly or recklessly provides substantial assistance" to a primary violator of the securities laws. 15 U.S.C. § 78t(e). Consequently, even with the addition of "recklessly" to the Exchange Act, aiding and abetting liability still requires that a defendant have a "general awareness of his role in the primary violation." *See, e.g.*, *Big Apple Consulting*, 783 F.3d at 801; *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 621 (5th Cir. 1993); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–96 (5th Cir. 1975); *SEC v. Arbitrade Ltd.*, No. 22-cv-23171, 2023 WL 2785015, at *9 (S.D. Fla. Apr. 5, 2023); *SEC v. Blackburn*, 156 F. Supp. 3d 778, 794 (E.D. La. 2015); *SEC v. Morris*, No. Civ. A. H-04-3096, 2005 WL 2000665, at *9 (S.D. Tex. Aug. 18, 2005).

Indeed, the SEC concedes that *Woodward v. Metro Bank of Dallas*, despite being a pre-Dodd-Frank Act case, correctly outlines the standard for establishing "general awareness." *See* Resp. at 11, n.6. As the *Woodward* court explained, "the clue to liability is some sort of

---

[1] *SEC v. Big Apple Consulting USA, Inc.,* relied on by the SEC, does not apply a recklessness standard. 783 F.3d 786, 801 (11th Cir. 2015). Rather, the Eleventh Circuit affirmed the trial court's jury instruction applying a *severe recklessness* standard, even though the trial was held after Dodd-Frank went into effect. *See id.* ("Ultimately, we conclude that the district court did not err when it found that severe recklessness was sufficient to constitute acting 'knowingly' under § 20(e) of the Exchange Act.").

**DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT – PAGE 2**

knowledge," or else aiding and abetting liability risks being over-inclusive and imposing unfair burdens upon individuals and entities to act as insurers against the bad acts of others. *See id.* at 95–96. The mechanism used to prevent the over-inclusivity *Woodward* cautioned against is to require that the alleged aider and abettor have "general awareness that one's role was part of an overall activity that is improper." *Id.* at 95.

Like the *Woodward* court, both pre- and post-Dodd-Frank cases have held that meeting the "general awareness" pleading requirement depends on the nature and circumstances of the transaction in question. The scienter requirement underlying the "general awareness" standard "varies on a sliding scale from 'recklessness' to 'conscious intent,'" but is assumed to be "conscious intent . . . unless there is some special duty of disclosure, or evidence that the assistance to the violator was unusual in character and degree." *Abbott*, 2 F.3d at 621; *see also, e.g.*, *Blackburn*, 156 F. Supp. 3d at 794 (same); *Morris*, 2005 WL 2000665, at *9 (same).

In other words, regardless of whether the Exchange Act contemplates a "reckless" standard after Dodd-Frank, aiding and abetting liability obliges the SEC to prove "general awareness" equal to "conscious intent," unless some special duty of disclosure exists or the defendant rendered unusual assistance to the primary perpetrator. *See, e.g.*, *Woodward*, 522 F.2d at 97 ("In a case combining silence/inaction with affirmative assistance, the degree of knowledge required should depend on how ordinary the assisting activity is in the business involved. If the evidence shows no more than transactions constituting the daily grist of the mill, we would be loathe to find [Rule] 10b-5 liability without clear proof of intent to violate the securities laws."). The "facts" alleged in the SEC's Complaint are insufficient, on their face, for this showing. And their own admissions in the Complaint—that the F&M Defendants had no knowledge of McKnight's scheme, that McKnight told them he had sole discretion over the funds, that they did not know the firm's name

was used by McKnight in any transactions because they did not know about the transactions—render it an impossibility that their conduct meets the requisite standard. *See* Compl. ¶¶ 85, 86.

## II. The Complaint Fails to Allege That the F&M Defendants Had a "General Awareness" of McKnight's Actions or Their Role in Furthering His Scheme.

### A. The F&M Defendants Did Not Ignore Obvious Red Flags.

The Complaint does not allege any facts showing that the F&M Defendants had any general awareness of McKnight's scheme to violate the securities laws. In analyzing a party's "general awareness," "the surrounding circumstances and expectations of the parties are critical. If the alleged aider and abettor conducts what appears to be a transaction in the ordinary course of his business, more evidence of his complicity is essential." *Woodward*, 522 F.2d at 95. "General awareness" may also be found where an aider and abettor encountered "red flags" or "suspicious events creating reasons for doubt that should have alerted him to the improper conduct of the primary violators." *SEC v. Morris*, No. Civ. A. H-04-3096, 2005 WL 2000665, at *9 (S.D. Tex. Aug. 18, 2005). Not just any "red flags" will suffice, however. The "red flags" creating reasons to suspect that the primary violator is engaged in securities law violations must be "***so obvious*** that the actor ***must have been aware*** of the danger of violations." *Arbitrade*, 2023 WL 2785015, at *9 (emphasis added).[2]

The "red flags" the SEC identifies in the Complaint are neither supported by actual facts nor the type of obvious indicators of wrongdoing that have been held to show that an aider and abettor had a "general awareness" of his part in a fraudulent scheme. In its response, the SEC

---

[2] The F&M Defendants' Motion further discusses the facts of *Morris* and *Arbitrade* and shows how the conduct at issue in those cases is substantially different than the conduct at issue here. In *Morris*, the court did not find that the defendant ignored any obvious red flags or suspicious events where he reviewed and signed public filings that were substantially misleading. *See* Motion at 18. In *Arbitrade*, the defendant held himself out as the CEO of the company in question and ignored obvious signs of wrongdoing, such as the fact that a billion-dollar gold transaction was memorialized in a single-page, error-laden document, which indicated that it was fraudulent. *Id.*

**DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT – PAGE 4**

continues to maintain that the following alleged "facts" show the F&M Defendants had a general awareness that McKnight was engaged in an elaborate Ponzi scheme:

- The F&M Defendants generally "knew investors took comfort in the fact that the law firm was involved in the receipt of their investment funds;"

- The F&M Defendants generally had "an understanding that McKnight preferred to involve law firms in his deals because he believed investors were more comfortable sending their money to a reputable law firm than directly to McKnight;" and

- The F&M Defendants "recogniz[ed] that the investors were taking comfort in the fact that they had sent their money to a law firm rather than to McKnight directly."

*See* Resp. at 17; Compl. ¶¶ 3, 86, and 93.

But, the SEC does not plead a single fact supporting how or why it arrived at conclusions about what investors "knew" or "took comfort in," or how the F&M Defendants allegedly "underst[ood]" McKnight's preferences. The SEC does not allege that any communications or other interactions took place that would have caused the F&M Defendants to form these subjective beliefs about McKnight or about investors they neither knew existed nor communicated with. Indeed, the Complaint alleges the opposite—that the F&M Defendants did not even know that their law firm was being used to induce the investors to participate in McKnight's scheme. *See* Compl. ¶ 86. This fact renders the SEC's contradictory allegation factually impossible.[3]

The other "obvious indicators of wrongdoing" the SEC alleges to show that the F&M Defendants had a "general awareness" that they were participating in a Ponzi scheme include the fact that McKnight had previously been convicted of a drug-related offense, that McKnight had not previously "successfully complete[d] a transaction," and that he had outstanding legal bills. *See* Resp. at 12; Compl. ¶ 84. None of these purported "red flags" have anything to do with a Ponzi

---

[3] The averments of what the F&M Defendants knew are fabrications. There is no evidence the F&M Defendants ever communicated with investors; consequently, they could not know or recognize what did or did not "comfort" investors. The SEC is entitled to draw reasonable inferences from the facts; it is not entitled to misrepresentations.

**DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT – PAGE 5**

scheme, much less are they "obvious indicators" that McKnight was using the F&M Defendants to assist him in perpetrating one.

The SEC also alleges that another "obvious indicator" of McKnight's scheme was the fact that the F&M Defendants "knew that they were handling investor funds unrelated to any underlying legal work," that they did "not review or even possess the transaction documents related to the investments," and that the banking transactions made no reference to McKnight himself. Resp. at 13; Compl. ¶¶ 86, 91. But the F&M Defendants did not know they were handling investor funds—a point conceded by the SEC when it admitted McKnight lied to the F&M Defendants that he had sole discretion of the funds and that the F&M Defendants had nothing to do with the transactions. Compl. ¶ 86.

The SEC also falsely asserts that the F&M Defendants failed "to perform any degree of diligence," when the SEC's own Complaint alleges that McKnight (i) told Miller that McKnight had the sole discretion to direct the expenditure of incoming funds and (ii) "falsely told Miller that there was no escrow arrangement affecting the funds." Compl. ¶ 85. Rather than showing a lack of diligence, the Complaint itself alleges that there was an attempt at diligence, which was undermined by McKnight's lies to the F&M Defendants. *Id.*

Similarly, even if the F&M Defendants were fiduciaries of incoming investment funds, which they were not, McKnight told the F&M Defendants that he had the sole discretion to direct the expenditure of the funds. *Id.* Accordingly, absent any agreement to the contrary, escrow or otherwise, the only fiduciary duty the F&M Defendants owed was to McKnight alone, F&M's client and the controller of the funds, not to the alleged investors depositing the funds. *See, e.g.*, *JTREO, Inc. v. Hightower & Assocs., Inc.*, No. 03-19-00255-CV, 2020 WL 3468148, at *2 (Tex. Ct. App. June 18, 2020) (holding that absent a written escrow agreement, attorney did not serve as

an escrow agent and did not owe the non-client plaintiff a fiduciary duty and holding that as long as the funds remained in control of the client/principal's attorney, they were in the control of the client/principal); *Underground Utils. Inc. v. JP Morgan Chase Bank, N.A.*, 147 A.D. 3d 702 (N.Y. App. Div. 2017) (holding that bank did not owe a fiduciary duty to the depositor of funds, but rather owed a duty to the account holder who had the right to withdraw the funds).[4] The SEC's allegation that the F&M Defendants "abdicated control" of the funds to McKnight in violation of their purported fiduciary duties to unknown investors is therefore belied by the SEC's own allegations that McKnight lied to Miller and is meritless.

Finally, the SEC asserts that the F&M Defendants "blindly followed" McKnight's direction that they keep $76,000 towards the total outstanding legal fees owed to them by McKnight for prior legal services, and "failed to inquire whether investors knew that McKnight had directed the use of their funds this way." Resp. at 16–17. Yet again, the SEC contradicts its own allegation because McKnight told the F&M Defendants that he had the sole discretion about how to direct the funds. Compl. ¶ 85. The SEC alleges no facts supporting that the F&M Defendants had reason to suspect that McKnight's direction that a portion of the funds he stated he had control over be used to pay some of his outstanding fees was indicative of the fact that he was perpetrating an alleged Ponzi scheme. Once again, directing that some funds be used to pay outstanding debts is not the type of "obvious indicator of wrongdoing" that has been held to show one's "general awareness" of his role in aiding and abetting a securities law violation.

---

[4] The SEC cites New York Rule of Professional Conduct 1.15(a), which states that a lawyer in possession of "any funds or other property belonging to another person . . . is a fiduciary," but the rule does not state *to whom* the lawyer owes a fiduciary duty.

**DEFENDANTS FROST & MILLER, LLP AND KENNETH MILLER'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT – PAGE 7**

**B.     The F&M Defendants Owed No Obvious Duty of Disclosure and Did Not Render Extraordinary Assistance Such That Recklessness Establishes Awareness.**

Not only were there no obvious "red flags" to support that the F&M Defendants had general awareness that they were furthering a violation of the securities laws, but their actions do not amount to "extraordinary assistance" that would permit only a showing of "recklessness" to satisfy the "general awareness" requirement. The SEC makes the self-serving argument that the F&M Defendants' "blind acceptance of third parties' funds related to transactions the firm did not work on . . . is not merely 'daily grist of the mill' for practicing attorneys" (Resp. at 21), but this argument is unsupported by any fact. Instead, the Complaint contends that the F&M Defendants directed the distribution of funds from one of their recurring clients—an activity that is the definition of the "daily grist of the mill" for practicing transactional attorneys.

As argued in their motion, the F&M Defendants did not provide any "unusual assistance" to McKnight to assist him in perpetrating his scheme. The F&M Defendants distributed funds at their client's direction, and the SEC states no facts that support any other "assistance" the F&M Defendants rendered McKnight. Without more, the SEC has not alleged the "conscious intent" required to show "general awareness" that would satisfy aiding and abetting liability. *See, e.g.*, *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 621 (5th Cir. 1993).

**III.    The Complaint Does Not Allege That the F&M Defendants Provided Substantial Assistance in Support of McKnight's Fraudulent Schemes.**

The final element of any aiding and abetting claim requires that the SEC show that the F&M Defendants "in some sort associated [themselves] with [McKnight's] venture, that [they] participated in it as something that [they] wished to bring about, and that [they] sought by [their action] to make it succeed." *SEC v. Stack*, No. 1:21-cv-00051-LY, 2021 WL 4777588, at *7–8 (W.D. Tex. Oct. 13, 2021) (internal quotations omitted); Resp. at 17–18. The only act the SEC

alleges the F&M Defendants took to "further" McKnight's scheme was to follow his instructions after he lied to them about his authority to control the funds at issue. *See* Compl. ¶ 88. This act, without more, does not show that the F&M Defendants consciously associated themselves with McKnight's fraudulent scheme, especially when the SEC acknowledges that the F&M Defendants were at all times acting on false information provided to them by their client. *Id.* ¶ 85.

In its response, the SEC makes the self-serving statement that the F&M Defendants "substantially assisted McKnight in convincing investors to part with their money by funneling funds through their firm" (Resp. at 19), but this contention blatantly contradicts the allegations in the Complaint itself. In fact, as the SEC alleges, the F&M Defendants had ***no knowledge whatsoever*** that McKnight was using their firm's name to solicit investments from the victims of his scheme. Compl. ¶ 86. The SEC ignores the critical distinction between being a passive actor who unknowingly distributes funds that were fraudulently obtained, and an actor who knowingly or recklessly—that is, had reason to know because of obvious indicators—took an affirmative act with the intention of furthering fraud. To impose aiding and abetting liability on the former would exponentially expand the reach of aiding and abetting liability and would impose liability on the F&M Defendants who only acted the way they did because they were, themselves, victims of the fraud.

### IV. The Complaint Should Be Dismissed with Prejudice.

The SEC should not be permitted to amend its Complaint. It waited almost five years after the alleged conduct occurred to bring a 45-page, 155-paragraph Complaint. The Complaint was filed only after the SEC collected numerous documents from the F&M Defendants and after lengthy sworn testimony. Simply put, if the SEC had additional facts to include in its Complaint—

particularly a Complaint alleging fraud, which has a heightened pleading standard under Rule 9(b)—it should have done so by now.

There are no additional facts the SEC could offer to overcome its failure to allege that the F&M Defendants had "general knowledge" that they were participating in McKnight's scheme, nor overcome its failure to allege that the F&M Defendants provided McKnight with "substantial assistance" in furtherance of his scheme. Critically, the SEC also cannot correct the inconsistencies in its theory of liability against the F&M Defendants. Having alleged that the F&M Defendants had no knowledge that McKnight was using their law firm's name in order to ensnare unsuspecting investors in his scheme, that McKnight falsely told the F&M Defendants that he had sole discretion to direct the expenditure of the funds, and that McKnight falsely told Miller that there was no escrow arrangement affecting the funds, it is impossible to allege the F&M Defendants had a "general awareness" of their role in any fraudulent scheme.

## CONCLUSION AND REQUEST FOR ARGUMENT

Based on the foregoing, Defendants Frost & Miller, LLP and Kenneth Miller respectfully request that the Court grant their motion to dismiss the Complaint with prejudice. The F&M Defendants also respectfully request oral argument on the Motion to Dismiss.

                                          Respectfully submitted,

Dated: September 8, 2023               */s/ Jeff Ansley*
                                          Jeffrey J. Ansley
                                          State Bar No. 00790235
                                          jansley@vedderprice.com
                                          Samuel M. Deau
                                          State Bar No. 24135506
                                          sdeau@vedderprice.com

                                          **VEDDER PRICE P.C.**
                                          300 Crescent Court, Suite 400
                                          Dallas, Texas 75201
                                          469.895.4890

                                          **ATTORNEYS FOR DEFENDANTS**
                                          **FROST & MILLER, LLP AND**
                                          **KENNETH MILLER**

## CERTIFICATE OF SERVICE

     I certify that a true and correct copy of the foregoing was served electronically to all counsel of record on the 8th day of September, 2023 *via* the Court's CM/ECF system.

                                            */s/ Jeff Ansley*
                                            Jeffrey J. Ansley