## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No.  3:23-CV-641-L-BW |
| v. | |
| AARON CAIN MCKNIGHT, et al., | |
| Defendants, | |
| -and- | |
| ACCELERATED VENTURE PARTNERS, LLC; and TIMOTHY NEHER, | |
| Relief Defendants. | |

## PLAINTIFF'S RESPONSE TO RELIEF DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

**STATEMENT OF FACTS** ................................................................................................... 3

    I.   The Complaint's Factual Allegations .............................................................................. 3

        A. Defendant McKnight's Three Schemes .............................................................. 3

        B. Relief Defendants Received $750,000 Of Loan Proceeds From McKnight's
           Fraudulent HYIP Scheme .................................................................................... 3

    II.  Procedural History ........................................................................................................ 6

**ARGUMENT** ......................................................................................................................... 7

    I.   Standard Of Review ....................................................................................................... 8

        A. Legal Standards Applicable To Motions To Dismiss ......................................... 8

        B. Legal Standards Applicable To Relief Defendants ........................................... 10

    II.  The Court Possesses Subject Matter Jurisdiction With Respect To Relief Defendants ....... 12

        A. Relief Defendants' Rule 12(b)(1) Challenge Is Entirely Intertwined With The Merits
           Of The SEC's Claims And Therefore Should Be Denied ................................. 12

        B. Even If The Court Considers Relief Defendants' Attempted Factual Attack, It Is
           Woefully Inadequate .......................................................................................... 15

        C. In The Alternative, The Court Should Defer The Relief Defendants' Rule 12(b)(1)
           Motion Until The SEC Has Taken Discovery .................................................... 17

    III. The Complaint States A Claim For Which Relief May Be Granted With Respect To Relief
        Defendants ..................................................................................................................... 18

        A. The Complaint Adequately Alleges That Relief Defendants Received Ill-Gotten
           Gains And Do Not Have A Legitimate Claim To Those Funds ......................... 18

        B. The Authorities Relied Upon By Relief Defendants Are Unavailing .............. 20

    IV. *Liu* Has No Bearing On The Propriety Of Recovery From Relief Defendants .............. 23

**CONCLUSION** ................................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 10

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1996) ............................................................ 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 10

*CFTC v. Hanover Trading*,
    34 F. Supp. 2d 203 (S.D.N.Y. 1999) .............................................. 22

*CFTC v. Kimberlynn Creek Ranch, Inc.*,
    276 F.3d 187 (4th Cir. 2002) ................................... 11, 17, 22, 23, 24

*CFTC v. Sarvey*,
    No. 08-C-192, 2008 WL 2788538 (N.D. Ill. July 7, 2008) ............ 22

*CFTC v. Walsh*,
    618 F.3d 218 (2d Cir. 2010) ...................................................... 11, 22

*CFTC v. WeCorp, Inc.*,
    848 F. Supp. 2d 1195 (D. Haw. 2012) ............................................ 22

*Clark v. Tarrant County*,
    798 F.2d 736 (5th Cir. 1986) ............................................................ 8

*Eubanks v. McCotter*,
    802 F.2d 790 (5th Cir. 1986) ...................................................... 9, 17

*FTC v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016) ............................................................ 22

*Galindo v. Precision Am. Corp.*,
    754 F.2d 1212 (5th Cir. 1985) ........................................................ 16

*Guidry v. American Pub. Life Ins. Co.*,
    512 F.3d 177 (5th Cir. 2007) .......................................................... 10

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
    143 F.3d 1006 (5th Cir. 1998) .......................................................... 8

*Janvey v. Adams*,
  588 F.3d 831 (5th Cir. 2009) ........................................................................... passim

*Janvey v. Reeves-Stanford*,
  No. 3:09-CV-2151-N, 2010 WL 11463486 (N.D. Tex. Nov. 18, 2010) ............... 5, 13, 16

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ........................................................................................... 8

*Kovac v. Wray*,
  363 F. Supp. 3d 721 (N.D. Tex. 2019) ............................................................... 10

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
  369 F.3d 464 (5th Cir. 2004) ............................................................................. 10

*Mitchell v. Bailey*,
  982 F.3d 937 (5th Cir. 2020) ............................................................................. 7

*In re MPF Holdings US LLC*,
  701 F.3d 449 (5th Cir. 2012) ............................................................................. 9

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ............................................................................. 8

*Pickett v. Texas Tech Univ. Health Scis. Ctr.*,
  37 F.4th 1013 (5th Cir. 2022) ...........................................................2, 9, 12, 13, 14

*Porretto v. City of Galveston Park Bd. of Trustees*,
  -- F.4th --, 2024 WL 3886181 (5th Cir. 2024) ................................... 8, 9, 12, 17

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ............................................................................. 17

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) ............................................................................. 10

*SEC v. Berkeley Healthcare Dynamics, LLC*,
  No. 20-16754, 2022 WL 42807 (9th Cir. Jan. 5, 2022) ..................................... 24

*SEC v. Cavanagh*,
  155 F.3d 129 (2d Cir.1998) ............................................................................... 11

*SEC v. Cavanagh*,
  445 F.3d 105 (2d Cir.2006) ............................................................................... 10

*SEC v. Colello*,
   139 F.3d 674 (9th Cir.1998) ........................................................................ 10, 12

*SEC v. Complete Bus. Solutions Grp., Inc.*,
   538 F. Supp. 3d 1309 (S.D. Fla. 2021) ...................................................... 19, 20

*SEC v. Donnan*,
   No. 1:12-CV-2831-ODE, 2014 WL 11829334 (N.D. Ga. Sept. 15, 2014) .................... 11

*SEC v. Founding Partners Cap. Mgmt.*,
   639 F. Supp. 2d 1291 (M.D. Fla. 2009) ............................................................ 20

*SEC v. Liu*,
   591 U.S. 71 (2020) ..................................................................................... 2, 23, 24

*SEC v. McGee*,
   895 F. Supp. 2d 669 (E.D. Pa. 2012) ............................................................. 11

*SEC v. Merrill*,
   No. RDB-18-2844, 2021 WL 3022696 (D. Md. July 16, 2021) ...................... 24

*SEC v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ...................................................................... 22

*SEC v. World Cap. Mkt, Inc.*,
   864 F.3d 996 (9th Cir. 2017) ............................................................... 16, 18, 23

*SEC v. World Cap. Mkt., Inc.*,
   No. 14-02334, 2014 WL 12561076 (C.D. Cal. July 10, 2014) ...................... 19

*In re S. Recycling, L.L.C.*,
   982 F.3d 374 (5th Cir. 2020) ...................................................... 9, 12, 14, 17

*Shah v. Univ. of Texas Sw. Med. School*,
   54 F. Supp. 3d 681 (N.D. Tex. 2014) .............................................................. 7

*Sonnier v. State Farm Mutual Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007) ...................................................................... 10

*Suthoff v. Yazoo County Indus. Dev. Corp.*,
   637 F.2d 337 (5th Cir.1981) .......................................................................... 8

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ...................................................... 8, 9, 15, 17, 18

*In re Wyly*,
   526 B.R. 194 (N.D. Tex. Bankr. 2015) ............................................................ 11

*Young v. Hosemann*,
   598 F.3d 184 (5th Cir. 2010) ..................................................................... 8, 12

**Statutes and Rules**

15 U.S.C. § 78u ............................................................................................ 13, 23

Fed. R. Civ. P. 7 .................................................................................................. 1

Fed. R. Civ. P. 12 ......................................................................................... passim

Fed. R. Civ. P. 15 ............................................................................................... 7

**Other Authorities**

Wright & Miller, 5B Fed. Prac. & Proc., § 1350 (3d ed. 2004) ......................... 15

Wright & Miller, 5B Fed. Prac. & Proc., § 1350 (4th ed. 2024) ......................... 17

Wright & Miller, 10B Fed. Prac. & Proc., § 2738 (4th ed. 2024) ...................... 16

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), pursuant to Rules 7(b) and 12(b) of the Federal Rules of Civil Procedure, submits the following response to the motion to dismiss filed by relief defendants Accelerated Venture Partners ("AVP") and Timothy Neher ("Neher") (together, the "Relief Defendants"). *See* Mot. Dismiss, Aug. 8, 2024, Dkt. 66 ("Motion" or "Mot."); Neher Decl., Ex. 1 to Mot., Dkt. 66-1 ("Neher Decl."). For the reasons set forth below, the Court should deny[1] Relief Defendants' motion.

## **INTRODUCTION**

In this matter, the SEC alleges that the Relief Defendants have no legitimate claim to $750,000 they received in illicit profits derived from a multi-million dollar investment fraud orchestrated by Defendant Aaron Cain McKnight ("McKnight"). Relief Defendants ask this Court to dismiss the SEC's claim relying almost entirely on Neher's unsubstantiated assertion that Relief Defendants in fact have a legitimate claim to the $750,000 in investor funds they acknowledge they received from McKnight. At bottom, the Motion seeks to dismiss the SEC's claims on their merits simply on Neher's say so, without any supporting documentation and before a shred of discovery has been exchanged. Unsurprisingly, the law does not countenance the dismissal of claims on such a flimsy reed that would allow relief defendants to avoid the disgorgement of illicit proceeds based merely on their own bald assertions of a legitimate interest in such proceeds. Accordingly, the Motion should be denied.

In the Motion, Relief Defendants argue that the Court should dismiss the SEC's complaint against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For

---

[1] As set forth more fully herein, the SEC asks the Court to (i) deny the motion to dismiss under Rule 12(b)(6) and (ii) deny or, in the alternative, defer decision on the motion to dismiss under Rule 12(b)(1) pending further discovery on any jurisdictional issues and, if necessary, an evidentiary hearing.

their 12(b)(1) argument, they argue that the Court should give weight to a declaration submitted by Neher (the "Neher Declaration") claiming that the $750,000 represented compensation for services rendered.  The Court should not give weight to the Neher Declaration because it lacks any supporting documentation or other evidence to support Neher's claims.  Further, Relief Defendants' argument is indistinguishable from a challenge on the merits of the SEC's cause of action.  In the Fifth Circuit, the "general rule" is that "resolution of the jurisdictional issue on a 12(b)(1) motion is improper where the jurisdictional attack is intertwined with the merits of a claim." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022) (cleaned up).  At best, Relief Defendants' objection is premature and the Court should permit discovery to determine whether Relief Defendants provided appropriate consideration in exchange for the funds.

For their 12(b)(6) argument, Relief Defendants incorrectly argue that the Complaint fails to allege plausibly that they lack a legitimate ownership interest in the funds.  Contrary to their arguments, the Complaint sufficiently alleges that McKnight (through an entity he controlled) sent ill-gotten gains to Relief Defendants. The Complaint further alleges that although this transfer was sent as an investment in a purported trading program organized by Relief Defendants, they spent the money on non-investment purposes and endeavors including travel expenses, fancy restaurants, and other entertainment.  Although Relief Defendants may contest these factual allegations at a later stage in the litigation, they should be accepted as true by the Court for the purposes of the motion to dismiss and therefore defeat Relief Defendants' effort to argue the merits at this stage.

Lastly, Relief Defendants argue that the Court should not order disgorgement against them pursuant to the United States Supreme Court's decision in *SEC v. Liu*, 591 U.S. 71 (2020).  As

discussed below, Relief Defendants' argument lacks merit because *Liu* does not bear upon the propriety of recovery from relief defendants.

## STATEMENT OF FACTS

### I.      The Complaint's Factual Allegations

The SEC fully incorporates its Complaint into this Response, but provides a summary of the key allegations against Relief Defendants:

#### A.      Defendant McKnight's Three Schemes

As alleged in the Complaint, from approximately March 2018 to September 2021, McKnight orchestrated three fraudulent schemes through which he defrauded approximately 28 investors out of more than $8.4 million.  *See* Complaint, Mar. 23, 2023, Dkt. 1 and 6 ("Compl."), ¶ 1.  The first scheme, which McKnight operated from March 2018 to at least April 2019 through a collection of entities he controlled known as the CGE Group ("CGE"), involved offering a high-yield investment "trading program" (the "HYIP Scheme").  *Id*. ¶ 2.  In the second scheme, from April to May 2019, McKnight solicited a $2.3 million investment from the client of an SEC-registered investment adviser ("RIA").  *Id.* ¶ 4.  The investment would supposedly fund an insurance policy needed to close a $450 million note offering (the "RIA Scheme").  *Id.*.  Finally, in September 2021, McKnight defrauded investors through a third scheme in which he told investors through an intermediary that their investment would fund a "bond fee" required to complete a $300 million bond offering for a personal protective equipment company (the "PPE Scheme").  *Id*. ¶ 5.

#### B.      Relief Defendants Received $750,000 Of Loan Proceeds From McKnight's Fraudulent HYIP Scheme

The Relief Defendants received $750,000 in funds derived from the first of McKnight's three fraudulent schemes — the HYIP Scheme.  *See* Compl. ¶ 70.  Investments in the HYIP Scheme promised outlandish returns purportedly made possible through the pooling of investors'

smaller deposits. *Id.* ¶ 2. This pooling would supposedly enable investors to collectively take advantage of McKnight's and the CGE Group's experience and connections to access investment opportunities normally reserved for wealthier and more sophisticated investors. *Id.* McKnight would then theoretically use the pooled funds to make multimillion-dollar investments vaguely described as "trades" or "transactions," often through the European Central Bank. *Id.* In exchange for investing thousands of dollars each, investors were promised generous returns generally ranging from 40 percent to 100 percent per month for ten to twelve months. *Id.* In reality, the trading program did not exist. *Id.* McKnight spent the nearly $5.6 million in investor funds on non-investment purposes, including the down payment on a home he later inhabited, funding a jazz club he partially owned, and making cash withdrawals. *Id.* None of the investors received any returns on their investment or their principal investment back, apart from a few Ponzi payments, and at least one investor lost their home. *Id.*

In one iteration of the HYIP Scheme, McKnight, working through an intermediary, fraudulently induced three investors to contribute their titles in real property into trusts McKnight had caused to be established for purposes of the scheme. *Id.* ¶¶ 62, 64. The president of one of the CGE entities McKnight controlled, CGE Real Estate Holdings, LLC ("CGE Real Estate"), was appointed as co-trustee over the trusts. *Id.* ¶¶ 25-26, 64. CGE then took out high-interest loans on the properties and deposited the proceeds into the bank accounts of CGE Real Estate. *Id.* CGE was supposed to invest the loan proceeds and use the returns to pay off the loan and provide additional cash to the three property owners (the "Property Investors"). *Id.*

Ultimately, this scheme caused the Property Investors to incur hundreds of thousands of dollars in debt. *Id.* ¶ 69. Loans were taken out against the three investors' properties for approximately (a) $560,000, (b) $780,000, and (c) $300,000, respectively. *Id.* The Property

Investors were never paid any profits. *Id.* ¶ 71.  McKnight and CGE Real Estate did not make the mortgage payments on the Property Investors' properties as promised. *Id.*  Lenders later foreclosed on two of the properties. *Id.*  One Property Investor ultimately lost her home to foreclosure. *Id.*

CGE Real Estate received proceeds of approximately $1.37 million from the loans (after fees and other closing costs), but the proceeds were not invested in legitimate investments. *Id.* None of the funds were used for legitimate investment purposes. *Id.*

In July 2018, McKnight sent $750,000 of the approximately $1.37 million in loan proceeds generated from the Property Investors in the HYIP Scheme to Relief Defendants through CGE for a purported trading program that appears to have been remarkably similar to the one peddled by McKnight. *Id.* ¶ 70.  As alleged in the Complaint, McKnight sent the $750,000 to Relief Defendants "as an investment." *Id.*  Instead of investing the funds, Neher spent this money on non-investment endeavors, including travel expenses, fancy restaurants, and other entertainment.  AVP and Neher never paid CGE any profits. *Id.*  None of the $750,000 principal investment was ever returned to CGE.[2] *Id.*

---

[2] In their brief, Relief Defendants assert that, "Prior to the SEC filing the Complaint, Neher provided documents and information to the SEC demonstrating that Relief Defendants returned to McKnight at least $129,500 of the $750,000 the SEC claims should be subject to disgorgement."  Mot. at 4. The SEC is investigating the basis for this representation, but, even if true, it would not affect the basis for Neher and AVP to be treated as relief defendants.  Whether Relief Defendants returned some portion of the $750,000 would be an affirmative defense to be determined through discovery, not a matter for the motion to dismiss.  Furthermore, even if the Court somehow were to accept Relief Defendants' representation for purposes of their motion, this would mean that Relief Defendants did not return over $600,000 to McKnight.  Thus, the amount of returned funds would go to the question of the amount of recovery, not whether Neher and AVP should be treated as relief defendants.  *See Janvey v. Reeves-Stanford*, No. 3:09-CV-2151-N, 2010 WL 11463486, at *5 (N.D. Tex. Nov. 18, 2010) ("a purported relief defendant does not divest a court of subject matter jurisdiction simply by making some showing of ownership to a portion of the sought-after funds").

**II.      Procedural History**

On March 23, 2023, the SEC filed its complaint in this civil enforcement action against Defendants McKnight, BPM Global Investments, LLC, BPM Asset Management, LLC, Sherry Rebekka Sims,  Kenneth Miller, Frost & Miller, LLP, and Harmony Brooke McKnight (collectively, "Defendants"), and against the Relief Defendants.  *See* Compl.  The Complaint brings claims for securities fraud against the Defendants and seeks disgorgement from the Relief Defendants of ill-gotten gains to which they have no legitimate claim.  *See generally* Compl.

Relief Defendant AVP was properly served by a process server on April 11, 2023.  Dkt. 15.  The SEC was unable to serve Neher at that time.  AVP did not file a response to the Complaint.  The SEC requested entry of default against AVP on May 29, 2024.  Dkt 51.  The Clerk of Court entered default against AVP on May 30, 2024.  Dkt. 53.

On June 3, 2024, the Court ordered the SEC to effect service as to Timothy Neher or to seek permission to effect service through alternative means.  Dkt. 56.  On June 13, 2024, the SEC moved for permission to effect service through alternative means, which the Court granted on June 14, 2024.  Dkt. 58; Dkt. 61.  On June 17, 2024, Neher accepted service of the summons and complaint and requested additional time to respond so that he could engage counsel.  Dkt. 63, Ex. 3.  On July 31, 2024, Relief Defendants, now represented by counsel, filed an unopposed motion to set aside the default judgment against AVP and to extend the time for Relief Defendants to respond to the Complaint until August 8, 2024.  Dkt. 64.  On August 1, 2024, the Court granted Relief Defendants' motion and ordered the clerk to set aside the default against AVP.  Dkt. 65.

On August 8, 2024, Relief Defendants filed a motion to dismiss the complaint against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 66.

## <u>ARGUMENT</u>

Relief Defendants' motion to dismiss should be denied.  Neher and AVP received, directly or indirectly, funds or other property from Defendant McKnight, which are either the proceeds of, or are traceable to the proceeds of, unlawful activities alleged in this Complaint to which they have no legitimate claim.  Compl. ¶¶ 69-70, 154.  Relief Defendants' 12(b)(1) motion fails because it is inextricably intertwined with the factual issues determinative of the merits of the case and thus cannot be dismissed for lack of subject matter jurisdiction.  Further, the Neher Declaration proffered in support of the Rule 12(b)(1) motion fails to provide any actual evidence to substantiate Relief Defendants' arguments.  In the alternative, the Court should, at a minimum, afford the SEC an opportunity to engage in jurisdictional discovery and conduct a hearing before ruling on the motion.  Relief Defendants' 12(b)(6) motion lacks merit because it amounts to contesting the factual allegations in the Complaint, which are presumed to be true for purposes of a motion to dismiss.  Additionally, Relief Defendants' argument that the United States Supreme Court's decision in *Liu* contradicts the relief requested in the Complaint lacks merit because. *Liu* does not bear upon the propriety of recovery from relief defendants.  Accordingly, none of Relief Defendants' arguments satisfy the standards for a motion to dismiss and the motion should be denied.[3]

---

[3] If the Court nevertheless grants Relief Defendants' motion to dismiss, the Court should grant the Commission leave to replead.  *See Shah v. Univ. of Texas Sw.Med. School*, 54 F. Supp. 3d 681, 707 (N.D. Tex. 2014) ("the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead"); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").  Any such dismissal should be made without prejudice.  *See Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020) ("[A] lack of subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.  Accordingly, such a dismissal should be made without prejudice.").

# I.     Standard Of Review

## A.     Legal Standards Applicable To Motions To Dismiss

"A motion under 12(b)(1) should be granted only if it appears *certain* that the plaintiff

cannot prove *any* set of facts in support of his claim that would entitle him to relief." *Home*

*Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)

(emphasis added); *see also Clark v. Tarrant County*, 798 F.2d 736, 741–42 (5th Cir. 1986) (a

federal claim "should not be dismissed for lack of subject matter jurisdiction unless the alleged

claim is immaterial or is wholly insubstantial and frivolous").  Accordingly, dismissal for lack of

subject matter jurisdiction is appropriate "only where the plaintiff's claim has no plausible

foundation or is clearly foreclosed by a prior Supreme Court decision." *Williamson v. Tucker*, 645

F.2d 404, 416 (5th Cir. 1981) (quotations omitted); *see also Porretto v. City of Galveston Park Bd.*

*of Trustees*, -- F.4th --, 2024 WL 3886181, at *11 (5th Cir. 2024) (same).

The burden of establishing that the court has subject matter jurisdiction to entertain an

action rests with the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.

375, 377 (1994).  However, this pleading burden is "low: only claims 'patently without merit . . .

justify the district court's dismissal for want of jurisdiction.'" *Young v. Hosemann*, 598 F.3d 184,

188 (5th Cir. 2010) (quoting *Suthoff v. Yazoo County Indus. Dev. Corp.,* 637 F.2d 337, 340 (5th

Cir. 1981)).

A challenge under Rule 12(b)(1) may be presented by a "facial" or a "factual" attack.

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  A facial attack prevails if the

allegations of the complaint are insufficient to support invocation of the court's jurisdiction.  *Id.*  In

a factual attack, the party opposing jurisdiction submits evidence, which the court must assess to

determine the validity of its jurisdiction.  *Id.*  In examining a Rule 12(b)(1) motion, the district

court is empowered to consider matters of fact which may be in dispute.  *Williamson*, 645 F.2d at 413.

However, of particular relevance here, "[w]hen the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits."  *Eubanks v. McCotter*, 802 F.2d 790, 792-93 (5th Cir. 1986).  To determine whether this standard applies, courts look to "the *extent* to which the jurisdictional question is intertwined with the merits, considering such factors as whether the statutory source of jurisdiction differs from the source of the federal claim and whether judicial economy favors early resolution of the jurisdictional issue."  *In re S. Recycling, L.L.C.,* 982 F.3d 374, 380 (5th Cir. 2020) (emphasis in original); *see also Porretto*, 2024 WL 3886181, at *11 (same).  When the jurisdictional question is intertwined with the merits, the proper course is for the court to decline to assess factual issues at the pleading stage, and instead accept the complaint's well-plead allegations as true considering them in the light most favorable to the plaintiff.  *See Pickett*, 37 F.4th at 1030 (holding that district did not err in declining to resolve disputed factual issue when Rule 12(b)(1) claim was so intertwined with merits and proceeded to assess motion under the typical Rule 12(b)(6) standard).  At a minimum, the court should permit the plaintiff to engage in discovery on the factual issues enmeshed in the jurisdictional question before ruling on such a motion.  *See In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) ("while a court should determine whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact").

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the claim to relief is valid.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  The "[f]actual allegations [of a complaint] must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (quotation marks, citations, and footnote omitted).  In reviewing a Rule 12(b)(6) motion, the court must accept all well-plead facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Kovac v. Wray*, 363 F. Supp. 3d 721, 739 (N.D. Tex. 2019).

## B.     Legal Standards Applicable To Relief Defendants

A relief defendant, sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief.  *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009) (citing *SEC v. Cavanagh*, 445 F.3d 105, 109 n. 7 (2d Cir. 2006)).  A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds.  *Id.*; *see also SEC v.*

*Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("the lack of a legitimate claim to the funds is the defining element of a nominal defendant").

This two-prong test applied to relief defendants is sometimes called the *Cavanagh* test, after the Second Circuit case in which the test was articulated. *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) (*Cavanagh I*); *see also In re Wyly*, 526 B.R. 194, 200 (N.D. Tex. Bankr. 2015). Whether a relief defendant indeed lacks a legitimate claim to ill-gotten assets for the purposes of *Cavanagh*'s second prong depends on the nature of the relief defendant's interest in the assets and the means by which the assets passed to the relief defendant. *See Adams*, 588 F.3d at 834-35; *see also CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) (citing *Adams* among other examples of legitimate and illegitimate claims under the *Cavanagh* test); *Wyly*, 526 B.R. at 200. In the securities context, relief defendants have no "legitimate claim" to funds in a variety of circumstances. *See, e.g., SEC v. Donnan*, No. 1:12-CV-2831-ODE, 2014 WL 11829334, at *7-9 (N.D. Ga. Sept. 15, 2014) (relief defendants had no legitimate claim to net profits they received from a Ponzi scheme above the amount of their original purported investment); *SEC v. McGee*, 895 F. Supp. 2d 669, 688 (E.D. Pa. 2012) (denying relief defendants' motion to dismiss where SEC alleged they had no legitimate claim to proceeds of their broker's insider trading that used their funds as principal).

Importantly, "[be]cause a nominal defendant has no ownership interest in the funds at issue, once the district court has acquired subject matter jurisdiction over the litigation regarding the conduct that produced the funds, it is not necessary for the court to separately obtain subject matter jurisdiction over the claim to the funds held by the nominal defendant; rather, the nominal defendant is joined purely as a means of facilitating collection." *Adams*, 588 F.3d at 834 (quoting *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002)).

II.     **The Court Possesses Subject Matter Jurisdiction With Respect To Relief Defendants**

Relief Defendants' facial and factual attacks on subject matter jurisdiction pursuant to Rule 12(b)(1) both lack merit, and the SEC's Complaint easily satisfies the "low" burden for establishing subject-matter jurisdiction.  *Young,* 598 F.3d at 188.  For their facial attack, Relief Defendants erroneously argue that the Complaint fails to allege that they received ill-gotten gains from the Defendants for the same reasons as their Rule 12(b)(6) motion discussed below.  Relief Defendants' factual attack is indistinguishable from a motion on the merits of the SEC's claims and is therefore inappropriate for resolution at the pleading stage.  See *Pickett,* 37 F.4th at 1030.  Moreover, to support their Rule 12(b)(1) motion, Relief Defendants rely solely upon the conclusory and self-serving Neher Declaration, which provides no supporting evidence to conclude that Relief Defendants had a legitimate interest in the $750,000 received from McKnight in exchange for purported "services" they performed.  *See* Mot. at 7; Neher Decl. ¶¶ 6-9.

A.     **Relief Defendants' Rule 12(b)(1) Challenge Is Entirely Intertwined With The Merits Of The SEC's Claims And Therefore Should Be Denied**

Relief Defendants entire Rule 12(b)(1) challenge to this Court's jurisdiction in this matter is that they have a legitimate claim to the $750,000 in investor funds at issue.  Mot. at 6-7.  This fact renders Relief Defendants' motion wholly duplicative of a challenge on the merits.  Whether or not a putative relief defendant has a legitimate claim to funds derived from a fraud is the "defining element" of a relief defendant action.  *Colello*, 139 F.3d at 677.  The Fifth Circuit has repeatedly held that as a general matter "[r]esolution of the jurisdictional issue on a 12(b)(1) motion is improper where the jurisdictional attack is intertwined with the merits of a claim." *Pickett,* 37 F.4th at 1030 (cleaned up); *see also In re S. Recycling, L.L.C.,* 982 F.3d at 379-80; *Porretto*, 2024 WL 3886181, at *11.  In *Pickett,* the Fifth Circuit summarized its prior holdings to

12

set a three-question analysis to determine the extent to which the jurisdictional question is intertwined with the merits: (1) Does the statutory source of jurisdiction differ from the source of the federal claim?; (2) Can the jurisdictional issue be extricated from the merits and tried as a separate issue?; and (3) Does judicial economy favor early resolution of the jurisdictional issue? *Pickett*, 37 F.4th at 1030-31 (cleaned up).

Here, the answer to all three questions is unequivocally *no*. The first inquiry asks whether "the court's subject matter jurisdiction is derived from the same statute as the cause of action." *Pickett*, 37 F.4th at 1031 (quotation omitted). The SEC seeks disgorgement of ill-gotten gains from Relief Defendants, including under Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(5)], which provides that, "the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate and necessary for the benefit of investors." Compl. ¶¶ 11, 153-55, Prayer For Relief IX. As discussed above, courts have long held that ordering disgorgement against a relief defendant falls within the court's equitable power where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds.[4] *Adams*, 588 F.3d at 834; *see also Janvey v. Reeves-Stanford*, No. 3:09-CV-2151-N, 2010 WL 11463486 (N.D. Tex. Nov. 18, 2010), at *3 (noting "the ancient principle that courts have the power to provide equitable relief applies to cases involving federal securities laws"). Accordingly, the cause of action and the nature of the court's equitable jurisdiction here are coextensive.

---

[4] In addition, Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], which was enacted following *Liu*, expressly permits courts to order disgorgement 'of any unjust enrichment by the person who received such unjust enrichment as a result of such violation.'" Likewise, Section 21(d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(7)] states that "under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."

The second question turns on whether the legal issues are "identical." *Pickett*, 37 F.4th at 1031 (quoting *S. Recycling*, 982 F.3d at 381). As noted above, a claim against a relief defendant must satisfy only two elements and the jurisdictional question the Relief Defendants raise is identical to the merits question for the second element, *i.e.*, whether they have a legitimate claim to the funds at issue. The court cannot decide this issue without reaching the merits of the claim. Thus, "[i]t is not possible to 'extricate' the jurisdictional claim from the merits claim" and try it as a separate issue. *Id.* (quoting *S. Recycling*, 982 F.3d at 381).

As to the third question regarding judicial economy, the court in *Pickett* noted that it is "closely related" to the second question. *Id.* (quoting *S. Recycling*, 982 F.3d at 382). The court went on to note that "[j]udicial economy is served by resolving contested fact issues at the pleading stage where, for instance, the jurisdictional question is much simpler than the merits question." *Id.* As in *Pickett*, that is simply "not true here: the jurisdictional question *is* the merits question." *Id.* (emphasis in original). Relief Defendants' jurisdictional challenge – that they have a legitimate claim to the funds at issue – is not simpler than the merits issue; they are one and the same. Because the issue raised by Relief Defendants' Rule 12(b)(1) claim is so intertwined with the merits, the Court should decline to resolve factual disputes now as to subject-matter jurisdiction, to include declining to consider the Neher Declaration. Instead, the Court at this stage should accept the SEC's well-plead allegations as true and in the light most favorable to the SEC and allow the case to proceed to discovery. *Id.* at 1029 ("If . . . a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination

14

of the merits either by the district court on a summary judgment motion or by the fact finder at trial.") (quoting Wright & Miller, 5B Fed. Prac. & Proc. § 1350 (3d ed. 2004)).[5]

### B.   Even If The Court Considers Relief Defendants' Attempted Factual Attack, It Is Woefully Inadequate

Even if the Court chooses to the delve into Relief Defendant's factual attack, it falls far short of putting forth either the quantum or quality of evidence necessary to deprive the Court of subject matter jurisdiction.

The Neher Declaration states that the $750,000 was compensation for Relief Defendants to work to "develop domestic and international financing networks" and to "put together a global platform to finance corporate bonds and other instruments."  Neher Decl. ¶ 6.  The Neher Declaration, however, provides no substantive description of the services allegedly performed other than vaguely stating that it was used for "developing financing networks and obtaining credit facilities to support financing opportunities, among other things."  Neher Decl. ¶ 8. Moreover, the Neher Declaration provides no receipts of expenses, no time log of services, no communications with any other entities regarding these efforts, nor any other basis to conclude that the alleged services were performed.  In short, the Neher Declaration provides no evidentiary basis to conclude whether Relief Defendants had a legitimate interest in the $750,000 provided by McKnight

Moreover, the Motion and the Neher Declaration claim that the entire $750,000 was paid as *compensation* for services rendered, but this ignores the fact that the Complaint alleges these funds were sent as an *investment* on behalf of investors in the HYIP Scheme.  Mot. at 9; Neher

---

[5] In the alternative, as explained further below, the Court should at least permit the SEC to take jurisdictional discovery on this factual issue before resolving the Rule 12(b)(1) Motion. See *Williamson*, 645 F.2d at 414.

Decl. ¶ 6, Compl. ¶ 70.  This is a purely factual dispute that, standing alone, cannot deprive the Court of subject matter jurisdiction.  In an analogous case that addressed this jurisdictional question directly, *SEC v. World Capital Market, Inc.*, 864 F.3d 996, 1005 (9th Cir. 2017), the Ninth Circuit rejected a relief defendant's claim that the mere existence of a loan agreement deprived the court of subject matter jurisdiction.  There the court noted the implication of a contrary result, holding:

> To conclude that the district court lacks jurisdiction to engage in such fact finding after the mere invocation of a claim of entitlement to the funds would effectively eliminate the relief defendant procedure in SEC enforcement actions in any case involving a disputed claim to funds alleged to be the proceeds of securities fraud.

*Id*.

Even in the case the Relief Defendants heavily rely on, *Adams*, the validity of the underlying loan agreements at issue was undisputed and required a "sufficient" showing of a "legitimate ownership interest" to preclude treatment as relief defendants.  *See Adams*, 588 F.3d at 835.[6]  Here, the validity of Relief Defendants' claimed interest is very much in dispute and there has been no showing, never mind a *sufficient* showing, of a legitimate interest.  As another court in this district has held, "a purported relief defendant does not divest a court of subject matter jurisdiction simply by making some showing of ownership to a portion of the sought-after funds."  *Reeves-Stanford*, 2010 WL 11463486, at *5.  This is for good reason, "[o]therwise,

---

[6] Analogously, in the summary judgment context, courts have refused to find disputed issues of material fact on the basis of conclusory affidavits without supporting evidence.  *See, e.g., Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment"); Wright & Miller, 10B Fed. Prac. & Proc., § 2738 (4th ed. 2024) ("ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion").

individuals and institutions holding funds on behalf of wrongdoers would be able to avoid

disgorgement (and keep the funds for themselves) simply by stating a claim of ownership,

however specious." *Kimberlynn Creek Ranch, Inc*., 276 F.3d at 192.  As such, the motion fails

to provide any basis to conclude that the SEC's claim has "no plausible foundation." *See*

*Williamson*, 645 F.2d at 416.

### C.  In The Alternative, The Court Should Defer The Relief Defendants' Rule 12(b)(1) Motion Until The SEC Has Taken Discovery

Even if the Court were to conclude that it should consider the merits of Relief Defendants'

jurisdictional arguments, the Court should defer consideration of their Rule 12(b)(1) motion until

trial.  The Court may consider a Rule 12(b)(1) motion before trial or defer the hearing until trial.

*See* Fed. R. Civ. P. 12(i); *see also* Wright & Miller, 5B Fed. Prac. & Proc., § 1350 (4th ed. 2024)

("court may postpone a decision until evidence is submitted at trial if the jurisdictional issue is

intertwined with the merits of the case").  Here, resolution of Relief Defendants' motion should be

deferred until trial because it would be "intertwined" with the core issue on the merits, *i.e.*, whether

Relief Defendants have a legitimate interest in the funds.  *See Eubanks*, 802 F.2d at 792-93

("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action,

the court should assume jurisdiction over the case and decide the case on the merits"); *see also*

*Williamson*, 645 F.2d at 414; *In re S. Recycling, L.L.C.,* 982 F.3d at 379-80; *Porretto*, 2024 WL

3886181, at *11.

At most, plaintiffs' motion presents a contested issue of fact that should not be resolved by

the Court solely based on the Neher Declaration but would instead require factual development and

an evidentiary hearing.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("a

motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain

that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to

relief"); *Williamson*, 645 F.2d at 414 ("[i]nsofar as the defendant's motion to dismiss raises factual

issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is

adequate in the context of the disputed issues and evidence"); *see also World Cap. Mkt.*, 864 F.3d

at 1005-06  (affirming District Court's rejection of relief defendant's claim of a legitimate

ownership interest after a Rule 12(b)(1) hearing).  Because the Court has not yet entered a

discovery order for this case, the SEC has not yet had the opportunity to conduct such discovery.

The Court should therefore deny Relief Defendants' motion, or, at minimum, provide the SEC

with an opportunity to conduct discovery and conduct an evidentiary hearing regarding these

contested facts, which would be accomplished most efficiently at trial.

## III.     The Complaint States A Claim For Which Relief May Be Granted With Respect To Relief Defendants

Relief Defendants erroneously argue that the Complaint fails to state a claim for which

relief may be granted.  *See* Mot. at 7-11.  Relief Defendants argue that the Complaint fails to allege

adequately that Relief Defendants received ill-gotten funds or do not have a legitimate claim to

those funds.  *See* Mot. at 8.  Defendants' arguments fail because the Complaint adequately alleges

that Relief Defendants received $750,000 in ill-gotten proceeds from an entity controlled by

McKnight without a legitimate ownership interest and the authorities cited by Relief Defendants in

support of their position are unavailing.

### A.     The Complaint Adequately Alleges That Relief Defendants Received Ill-Gotten Gains And Do Not Have A Legitimate Claim To Those Funds

The Complaint adequately alleges that Relief Defendants 1) received ill-gotten funds, and

2) do not have a legitimate claim to those funds.  *See* Compl. ¶¶ 70, 154; *see also Adams*, 588 F.3d

at 834.  With respect to the first prong of the inquiry, Relief Defendants argue, in conclusory

fashion, that the Complaint fails to allege that they received ill-gotten gains because "[t]he SEC

alleges that CGE paid $750,000 to Relief Defendants but CGE is not a party or a relief defendant and there are no facts in the Complaint showing that CGE was in receipt of ill-gotten funds from Defendants' alleged fraudulent schemes." Mot. at 8-9. The Complaint alleges that CGE Real Estate is one of many entities that comprised the CGE Group (a.k.a. "CGE") controlled by Defendant McKnight. *See* Compl. ¶ 25. The Complaint further alleges that CGE Real Estate received approximately $1.37 million in funds from the fraudulent scheme, $750,000 of which was transferred to Relief Defendants "through CGE." *See id.* ¶¶ 69-70. Thus, contrary to Relief Defendants' arguments, the Complaint adequately alleges that they received ill-gotten gains because the Complaint alleges that the $750,000 represented proceeds from Defendant McKnight's fraudulent HYIP Scheme funneled to Relief Defendants through entities under Defendant McKnight's control.

As to the second inquiry, Relief Defendants largely parrot their Rule 12(b)(1) claims, but the Complaint adequately alleges that Relief Defendants have no legitimate claim to the funds they received. "[A] claim of ownership is not legitimate where the relief defendant holds the funds in trust for the primary violator, the ownership claim is a sham, the relief defendant acted as a mere conduit of proceeds from the underlying statutory violation, or some similar specious claim to ownership." *SEC v. Complete Bus. Solutions Grp., Inc.*, 538 F. Supp. 3d 1309, 1343 (S.D. Fla. 2021) (quoting *SEC v. World Cap. Mkt., Inc.*, No. 14-02334, 2014 WL 12561076, at *2 (C.D. Cal. July 10, 2014)). Here, the Complaint adequately alleges that Defendant McKnight, through entities he controlled, transferred $750,000 to Relief Defendants as an investment in a  purported trading program. Compl. ¶ 70. As alleged in the Complaint, Neher spent these funds "on non-investment endeavors, including travel expenses, fancy restaurants, and other entertainment." *Id*. Further, "AVP and Neher never paid CGE any profits." *Id.* Accordingly, accepting these well-

plead allegations as true for purposes of this motion, Relief Defendants' contradictory assertion that they have a legitimate claim to these funds because they received them not as an investment in a purported trading program but instead as compensation are analogous to the "specious claim to ownership" discussed in *Complete Business Solutions*.  538 F. Supp. 3d at 1343.

  **B.**  **The Authorities Relied Upon By Relief Defendants Are Unavailing**

  The cases cited by Relief Defendants do not support their position that they possess a legitimate ownership interest in the ill-gotten funds.  Relief Defendants rely heavily on *SEC v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291 (M.D. Fla. 2009), where the court concluded that the SEC had failed to establish that the relief defendants lacked an ownership interest or legitimate claim in the funds they received.  In that case, the SEC alleged that Defendants made misrepresentations to investors when soliciting investor funds to fuel their business, which included making loans to the relief defendants in that case pursuant to written loan agreements which allowed the relief defendants to use the loan proceeds to purchase healthcare and commercial receivables.  *See Founding Partners*, 639 F. Supp. 2d at 1292.  In finding that the relief defendant was not properly joined, the *Founding Partners* Court reasoned that it was undisputed that the loan agreements were valid and gave the relief defendant rights and obligations with regard to the loan proceeds.  *Id.* at 1294.  It further noted that there had been "a debtor-creditor relationship between [relief defendant] and [Defendant] based on written agreements" for years.  *Id.*  Here, unlike *Founding Partners* or the other cases relied upon by Relief Defendants, where the "[c]omplaint affirmatively allege[d] facts showing that [the Relief Defendant] ha[d] a legitimate ownership interest in and/or legitimate claim to the loan proceeds", *id.* (emphasis in the original), the Complaint *does not* allege that Relief Defendants had a debtor-creditor relationship like the one in *Founding Partners* or that Relief Defendants made some other exchange of equal

value.  Instead, Relief Defendants received funds from McKnight as an investment but spent them on non-investment endeavors.  *See* Compl. ¶ 70.  Further, as noted above, unlike *Adams*, the validity of Relief Defendants' claim is in dispute.  The Complaint alleges the funds were an investment; Relief Defendants assert the funds were compensation.  Relief Defendants' attempts to analogize this case to *Founding Partners* thus fail.

Similarly, in *Adams*, the Fifth Circuit held that innocent investors in the *Stanford* Ponzi scheme who held certificates of deposit ("CDs") entered into well before the SEC's enforcement action could not have their investment proceeds frozen as relief defendants because the CDs constituted a legitimate ownership interest in the CDs' proceeds.  *See Adams*, 588 F.3d at 834-35.  As in *Founding Partners*, the Court held that the validity of the CD agreements was undisputed and represented legitimate investments and that it would be inequitable to claw back the CD proceeds from the investors.[7]  Here, on the other hand, the Complaint alleges that Relief Defendants received $750,000 from an entity controlled by McKnight as an investment but spent the money on non-investment endeavors, and returned neither profits nor any principal to CGE.  *See* Compl. ¶ 70.  Further, unlike here, the *Adams* court was considering this issue in the context of a claim for preliminary relief brought by a receiver seeking an asset freeze presumably with the benefit of documentary evidence submitted by both parties, rather than at the pleading stage on a motion to dismiss.  *See Adams*, 588 F.3d at 833-34.  Unlike *Adams*, the Complaint thus adequately alleges that Relief Defendants did not have a legitimate ownership interest in the funds.

Relief Defendants further rely upon various cases holding that compensation for services rendered may constitute a legitimate ownership interest that would make relief defendant treatment

---

[7] Indeed, the SEC filed an amicus brief in support of the investors in this matter.  *See Adams*, 588 F.3d at 834.

inappropriate.  *See* Mot. at 9-10.  Unlike this case, the cases Relief Defendants cite including a showing of evidence of services performed or other consideration provided, not simply the relief defendants' bald assertion that they had provided such consideration.  *See CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) (spouse received assets pursuant to separation agreement and was "good faith purchaser for value"); *CFTC v. WeCorp, Inc.*, 848 F. Supp. 2d 1195, 1202 (D. Haw. 2012) ("services in exchange for compensation" may be legitimate claim, but claim determined to be legitimate only after "full evidentiary record" determined that services were performed); *SEC v. Ross*, 504 F.3d 1130, 1142 (9th Cir. 2007) (it was undisputed that commissions received for sale of securities were "compensation for services rendered" ); *CFTC v. Hanover Trading*, 34 F. Supp. 2d 203, 207-08 (S.D.N.Y. 1999) (evidence of services performed at summary judgment); *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 178 (2d Cir. 2016) (undisputed facts of payment of accounts payable supported legitimate ownership claim at summary judgment); *Kimberlynn Creek Ranch*, 276 F.3d at 190, 192 (holding that relief defendants' ownership claim must be "valid in fact" and affirming district court's rejection of claim when relief defendant "produced no documentary evidence to support this claim, and the district court discredited his testimony"); *CFTC v. Sarvey*, No. 08-C-192, 2008 WL 2788538, at *3 n.2, *4-5 (N.D. Ill. July 7, 2008) (court determined that relief defendants had provided legitimate guarantee services after consideration of evidence of prior arbitration and "both parties ha[d] submitted evidence on the issue of whether [relief defendants] are in fact nominal parties").  These cases are inapplicable here because the allegations in the Complaint—which must be presumed true for purposes of a 12(b)(6) motion—are that Relief Defendants received the $750,000 as an investment, not for services rendered, and that the funds were spent on non-investment endeavors.  *See* Compl. ¶ 70.  In contrast to the relief defendants in these cases, Relief Defendants here have provided no evidence apart from the

conclusory and self-serving Neher Declaration on which to base their bald assertion that they instead received the contested funds as compensation.  The cases cited by Relief Defendants thus are inapposite.

Other Courts have further held that a party contesting relief must assert an interest both "recognized in law" and "valid in fact."  *See Kimberlynn Creek Ranch, Inc.*, 276 F.3d at 192 (rejecting relief defendant's ownership claim as "not factually valid"); *see also World Cap. Mkt.,* 864 F.3d at 1005 (affirming District Court's holding that relief defendant lacked entitlement to funds after 12(b)(1) hearing and distinguishing *Founding Partners*, *Adams*, *Ross* and *WeCorp* as "inapposite" because "each rests on an undisputed underlying factual premise of legitimacy missing in this case").  As opposed to *Founding Partners* and *Adams*, where it was undisputed that the relief defendants received the funds pursuant to valid loan and CD agreements, respectively, here the Complaint alleges that Relief Defendants received funds pursuant to an investment in a purported trading program but the money was spent on non-investment endeavors.  *See* Compl. ¶ 70.  Relief Defendants are free to contest these facts during discovery, summary judgment, or trial, but for the purposes of a Rule 12(b)(6) motion the allegations in the Complaint, which are presumed to be true, defeat their claims.  The Court should therefore deny Relief Defendants' motion.

## IV.    *Liu* **Has No Bearing On The Propriety Of Recovery From Relief Defendants**

Lastly, Relief Defendants argue that the Complaint should be dismissed against them because the Supreme Court's decision in *Liu* limited the remedy of disgorgement so that it was available "when assessed against only culpable actors."  *See Liu*, 591 U.S. at 84.  *Liu* addressed the question of whether § 78u(d)(5) of the Securities Exchange Act of 1934 authorizes the SEC to seek disgorgement beyond a defendant's net profits from wrongdoing."  *Id.* at 78.  The Supreme Court

concluded that "Congress prohibited the SEC from seeking an equitable remedy in excess of a defendant's net profits from wrongdoing." *See id.* at 85.

As other Courts that have considered this question have determined, *Liu* did not affect the scope of disgorgement as to relief defendants. *See SEC v. Berkeley Healthcare Dynamics, LLC*, No. 20-16754, 2022 WL 42807, at *2 (9th Cir. Jan. 5, 2022) ("*Liu* did not override our existing case law concerning disgorgement by relief defendants."); *SEC v. Merrill*, No. RDB-18-2844, 2021 WL 3022696, at *4 (D. Md. July 16, 2021), ("The *Liu* holding in no way changes the Fourth Circuit's directive that, in determining whether a relief defendant has a 'legitimate interest' in the ill-gotten funds, any 'claimed ownership interest must not only be recognized in law; it must also be valid in fact.'") (quoting *Kimberlynn Creek Ranch*, 276 F.3d at 192). As the Ninth Circuit explained, "*Liu* focused on disgorgement of 'profit,'" whereas "a relief defendant is not required to disgorge 'profits,' but instead only funds not received in exchange for consideration." *Berkeley Healthcare Dynamics, LLC*, 2022 WL 42807, at *2 (quoting *Liu*, 591 U.S. at 74)). "This approach provides stronger protection to relief defendants (who need not disgorge any funds to which they have a 'legitimate claim') than *Liu* provides for primary wrongdoers (who must disgorge all profits less legitimate expenses)." *Id.* It is also "consistent with the equitable principle emphasized in *Liu* that a remedy should be designed to restore the status quo and avoid being transformed into a penalty." *Id.* The same reasoning applies here, and Relief Defendants' motion should therefore be denied, or, at minimum, the SEC should be permitted to develop the factual record with respect to any jurisdictional facts determined by the Court to be at issue, *e.g.*, whether Relief Defendants provided consideration in the form of commensurate services in exchange for the funds.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Commission respectfully requests that the Court (i) deny the motion to dismiss under Rule 12(b)(6), and (ii) deny or, in the alternative, defer decision on the motion to dismiss under Rule 12(b)(1) pending further discovery on any jurisdictional issues and, if necessary, an evidentiary hearing.

Dated: August 29, 2024          Respectfully submitted,

                                **UNITED STATES SECURITIES
                                AND EXCHANGE COMMISSION**


                                <u>/s/ *John J. Todor*</u>
                                John J. Todor
                                (admitted pro hac vice)
                                District of Columbia Bar No. 479798
                                Trial Counsel
                                U.S. SECURITIES AND EXCHANGE COMMISSION
                                100 F Street, N.E.
                                Washington, D.C.  20549-5977
                                Telephone: (202) 551-5381
                                todorj@sec.gov

                                Anna O. Area
                                (admitted pro hac vice)
                                District of Columbia Bar No. 987572
                                Trial Counsel
                                U.S. SECURITIES AND EXCHANGE COMMISSION
                                100 F Street, N.E.
                                Washington, D.C.  20549-5977
                                Telephone: (202) 551-6417
                                areaa@sec.gov

                                Jennifer Reece
                                Local Counsel
                                Texas Bar No. 00796242
                                Trial Counsel
                                U.S. SECURITIES AND EXCHANGE COMMISSION
                                Burnett Plaza
                                801 Cherry Street, Suite 1900
                                Fort Worth, TX  76102
                                Telephone:  (817) 978-6442
                                Facsimile:  (817) 978-4927
                                reecej@sec.gov

                                Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

On August 29, 2024, I filed the foregoing Response to Relief Defendants' Motion to

Dismiss with the Clerk of Court for the U.S. District Court, Northern District of Texas.  I hereby

certify that I have served the document on all *pro se* parties of record, including the McKnight

Defendants, by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

/s/ *John J. Todor*
John J. Todor
Counsel for Plaintiff
