IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>AARON CAIN MCKNIGHT; BPM GLOBAL INVESTMENTS, LLC; BPM ASSET MANAGEMENT, LLC; KENNETH MILLER; FROST and MILLER, LLP; AND HARMONY BROOKE MCKNIGHT, §<br>§<br>§<br>§<br>§<br>§<br>§<br>Defendants, §<br>§<br>and §<br>§<br>ACCELERATED VENTURE PARTNERS, LLC; and TIMOTHY NEHER, §<br>§<br>§<br>§<br>Relief Defendants. § | Civil Action No. **3:23-CV-641-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Relief Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion") (Doc. 66), filed August 8, 2024. For the reasons herein explained, the court determines that dismissal at this time of Relief Defendants from this action and the disgorgement relief against them is not appropriate under Rules 12(b)(1) or 12(b)(6). It, therefore, **denies** Relief Defendants' Motion (Doc. 66).

I.     Background

In March 2023, the Securities and Exchange Commission ("SEC") filed an eight-count Complaint (Doc. 1) against Aaron C. McKnight ("McKnight" or "Mr. McKnight"), his associates,

and various entities under his control, alleging that Mr. McKnight orchestrated fraudulent schemes between 2018 and 2021 that resulted in 28 investors being defrauded out of more than $8.4 million. Accelerated Venture Partners, LLC ("AVP") and AVP's founder Timothy Neher ("Neher" or "Mr. Neher") were named in the Complaint as "Relief Defendants," who allegedly received ill-gotten funds or other property in connection with one of Mr. McKnight's fraudulent schemes, and that such funds or property are "either the proceeds of, or are traceable to the proceeds of" Mr. McKnight's unlawful activities and violations of the federal securities laws "to which they have no legitimate claim." Doc. 1 at 5.

The Complaint alleges that the three fraudulent schemes run by Mr. McKnight followed a similar pattern in which:

> McKnight portrayed himself as an experienced financial professional controlling financial services firms, which offered investment opportunities generating extraordinary returns. He used these fabricated credentials to raise funds from investors for enticing, but non-existent, investment opportunities. He then spent investors' money on himself, operating his outside business, sending money to friends and family, and making Ponzi-like payments to earlier investors.

Doc. 1 at 2. According to the Complaint, these schemes were carried out through the use of various purported financial services firms controlled by Mr. McKnight and his sister Harmony Brooke McKnight, who is also a defendant in this case.

The SEC alleges that several of these purported financial services firms referred to as the CGE Group ("CGE")[1] were involved in the first scheme that Mr. McKnight carried out between March 2018 to at least April 2019 involving the offering of a high-yield investment "trading program." The Complaint refers to this scheme as the "HYIP Scheme" and alleges that Mr. McKnight attracted investors to this scheme by posing as an investment professional running

---

[1] The Complaint alleges that none of the CGE entities has ever been registered with the SEC, and the entities comprising CGE appear to all be defunct now.

**Memorandum Opinion and Order – Page 2**

several CGE investment entities and promising exorbitant returns on investments.[2] The SEC alleges that, in reality, Mr. McKnight had no relevant financial industry experience and failed to disclose to investors his criminal history as a convicted felon. Mr. McKnight is alleged to have "propped up his own and CGE's false identities and reputation through a misleading CGE website that he created and/or controlled." Doc. 1 at 11. He also alleged to have used "misleading promotional materials" depicting him as "a recognized and active investor, philanthropist, financier and venture capitalist who has extensive experience with emerging growth companies" and United Nations Credentials that provided him with "connections to lucrative trading opportunities." *Id.* at 12.

Mr. McKnight allegedly took a number of steps in an effort to insulate himself from his fraudulent conduct in the HYIP Scheme by: (1) inserting middlemen between himself and investors to give investors the false impression that he was not controlling their investments; (2) placing other peoples' names, including aliases, instead of his own name on corporate documents for certain CGE entities to "obfuscate[] the ownership and control of CGE; (3) creating numerous CGE entities with similar names to cause confusion and muddy the flow of money to entities controlled by him; and (4) using aliases when communicating with investors by telephone and email, and signing documents, including agreements with investors. Doc. 1 at 13-14.

---

[2] With respect to HYIP schemes generally, the Complaint explains as follows:

> The hallmark of a high-yield investment program ("HYIP") scheme is the promise of incredible returns at little or no risk to the investor, often with promised annual (or even monthly, weekly, or daily) returns of 30 or 40 percent, or more. HYIPs are unregistered investments typically run by unlicensed individuals (*i.e.*, people like McKnight who are not associated with a Commission registrant). HYIP schemes are often described in vague terms and may use the term "prime bank" or refer to well-known banks in their marketing materials or transaction documents.

Doc. 1 at 11. The SEC alleges that "McKnight's HYIP Scheme exhibited all of these traits." *Id.*

**Memorandum Opinion and Order – Page 3**

As part of the HYIP Scheme from May to July 2018, Mr. McKnight allegedly used a middleman to find three investors with real estate who could invest in the scheme. After three such investors were found, the middleman then facilitated the transfer of the investors' titles to real property to CGE as an investment by relaying the transaction's details to investors for Mr. McKnight and helping complete the transaction documentation. In each case, the purported investments are alleged to have worked the same way:

> 64. Under the program, the three investors transferred their property titles into newly formed trusts. They appointed the president of CGE Real Estate Holdings, LLC (the "CGE Individual") as co-trustee over the property. CGE then took out high-interest loans on the properties. The loan proceeds were deposited into the bank accounts of CGE Real Estate Holdings, LLC ("CGE Real Estate"). CGE was supposed to invest the loan proceeds, and use the returns to pay off the loan and provide additional cash to the three property owners (the "Property Investors").
>
> 65. The arrangement between CGE and two of the Property Investors was memorialized through written Asset Management Agreements between the investors' new trusts and an entity named CGE, Inc. These agreements provided that the investors would receive $100,000 a month for six months. Based on conversations with McKnight, [Codefendant Sherry Rebekka] Sims [("Sims"), who acted as a middle[]man between McKnight and investors,] understood that investors would receive sufficient investment proceeds to pay off the loans, leaving the properties unencumbered at the end of the agreements' six month terms.
>
> . . .
> 69. Ultimately, this scheme caused the Property Investors to incur hundreds of thousands of dollars in debt. Loans were taken out against the three investors' properties for approximately (a) $560,000, (b) $780,000, and (c) $300,000, respectively. CGE Real Estate received proceeds of approximately $1.37 million from the loans (after fees and other closing costs), but the proceeds were not invested in legitimate investments. CGE Real Estate transferred one hundred thousand dollars of this money to [Defendant Frost and Miller, LLP, referred to as F&M]. F&M used that $100,000 to make a Ponzi payment to Investor B, at McKnight's direction. CGE Real Estate transferred at least $325,000 to the bank account of CMcKnight Group Enterprises, LLC. Bank records show that CMcKnight Group Enterprises, LLC did not use the money for legitimate investment purposes, either.

Doc. 1 at 19-21.

The Relief Defendants are alleged to have received $750,000 of the fraudulent proceeds from this aspect of the HYIP Scheme:

> 70. In July 2018, McKnight sent $750,000 of the loan proceeds through CGE to Relief Defendants AVP and Timothy Neher as an investment in a purported trading program that appears to have been remarkably similar to the one peddled by McKnight. Neher spent this money on non-investment endeavors, including travel expenses, fancy restaurants, and other entertainment. AVP and Neher never paid CGE any profits. None of the $750,000 principal investment was ever returned to CGE.

*Id.* at 19.  Regarding this scheme, the SEC further alleges that:

> 71. The Property Investors were never paid any profits. McKnight and CGE Real Estate did not make the mortgage payments on the Property Investors' properties as promised. Lenders later foreclosed on two of the properties. One Property Investor ultimately lost her home to foreclosure.
>
> 72. McKnight took responsibility for these transactions in numerous calls with Sims. McKnight also entered into a settlement agreement with the third Property Investor whereby he promised to pay off the loan balance of more than $200,000 and make additional payments to the third Property Investor of $208,000. McKnight made one $6,000 payment as promised under the settlement agreement but failed to make any other payments.
>
> 73. McKnight attempted to blame Neher for misappropriating all of the Property Investors' money. At other times, McKnight claimed the attorneys at F&M had stolen the Property Investors' money.

*Id.* at 21-22.

Pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(5), the SEC seeks disgorgement from Relief Defendants of the allegedly fraudulent proceeds they received from the HYIP Scheme:

> 154. Relief Defendants Neher and AVP received, directly or indirectly, funds or other property from Defendant McKnight, which are either the proceeds of, or are traceable to the proceeds of, unlawful activities alleged in this Complaint to which they have no legitimate claim.
>
> 155. By reason of the foregoing, it would be inequitable for Relief Defendants to retain the proceeds from violations of the federal securities laws and such proceeds should be disgorged.

*Id.* at 45.

Relief Defendants filed their current Motion on August 8, 2024, contending that they should be dismissed from this action because the court's lacks jurisdiction and, even if the court has jurisdiction, the SEC has failed to state a claim against them for which relief can be granted. In connection with their Motion and reply brief, Relief Defendants submitted two declarations by Mr. Neher to support their contention that dismissal under Rule 12(b)(1) is appropriate. Relief Defendants, however, note that they are not relying on these declarations to support their Motion under Rule 12(b)(6). The court begins its analysis by addressing Relief Defendants' Motion under Rule 12(b)(1).

## II.    Rule 12(b)(1) Motion

In addressing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "[a] district court may dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029, (5th Cir. 2022) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). There are limits, however, "to a district court's ability to resolve fact disputes on a Rule 12(b)(1) motion." *Pickett*, 37 F.4th at 1029. One such limitation is "whe[n] issues of fact are central both to subject matter jurisdiction and the claim on the merits." *Id.* (quoting *Montez v. Department of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004)).[3]

---

[3] In *Montez*, the Fifth Circuit explained that when:

"'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Montez*, 393 F.3d at 150 (quoting *Williamson*, 645 F.2d at 415; and citing *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985)).

As indicated, Relief Defendants submitted two declarations by Mr. Neher in connection with their Motion and reply to support their contention that dismissal under Rule 12(b)(1) is appropriate because they have a legitimate claim or sufficient ownership interest in the funds at issue such that the SEC is not entitled to disgorgement. As the SEC correctly notes, however, "a claim against a relief defendant must satisfy only two elements and the jurisdictional question the Relief Defendants raise is identical to the merits question for the second element"— "whether they have a legitimate claim to the funds at issue." Doc. 72 at 14. Because the factual dispute of whether Relief Defendants have a legitimate claim is central to both their jurisdictional and merits-based arguments of whether the SEC is entitled to disgorgement, the court cannot resolve this factual dispute by considering Mr. Neher's declarations and related factual arguments. Instead, it must determine at this stage only whether the SEC has stated a valid claim against Relief Defendants "by accepting [its] well-pleaded allegations as true and considering them in the light most favorable to [the SEC]." *Pickett*, 37 F.4th at 1031; *see also Worldwide Parking, Inc. v. New Orleans City*, 123 F. App'x 606, 608-09 (5th Cir. 2005) (quoting *Williamson*, 645 F.2d at 415).[4] As resolution of this issue overlaps with Relief Defendants' contentions under Rule 12(b)(6), the

---

[4] In their reply brief, Relief Defendants contend that *Pickett* does not preclude the court from ruling on their factual attack to jurisdiction based on Mr. Neher's declarations:

> The SEC cites to *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1031-32 (5th Cir. 2022) to contend that the [c]ourt cannot determine subject matter jurisdiction without considering whether the statutory source of jurisdiction differs from the source of the federal claim, if the jurisdictional issue can be extracted from the merits and tried as a separate issue, and whether judicial economy favor early resolution of the jurisdictional issue. Opp. at 12. However, this analysis is only necessary if the SEC has first established that Relief Defendants are proper relief defendants.

Doc. 73 at 4. Relief Defendants do not cite any legal authority to support this argument. The argument is also inconsistent with the Fifth Circuit's reasoning in *Montez*, which is cited by *Pickett*. *See Montez*, 393 F.3d at 150; *see also supra* n.3. Consistent with *Montez* and *Pickett*, the court, therefore, applies the legal standard applicable to Rule 12(b)(6) motions since Relief Defendants "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action" or request for relief under Rule 12(b)(6). Thus, while Relief Defendants are correct that resolution of factual attacks to subject matter jurisdiction usually turn on a court's consideration of the parties' respective evidence in resolving factual disputes outside of the pleadings, the court determines that Relief Defendants' challenge to jurisdiction must be handled in the manner explained in light of *Montez* and *Pickett*.

**Memorandum Opinion and Order – Page 7**

court addresses the issue in connection with Relief Defendants' Motion under Rule 12(b)(6) and determines for the reasons discussed in the next section that the allegations in the SEC's Complaint are sufficient to state a claim for disgorgement against Relief Defendants with respect to the funds at issue such that dismissal at this stage of the litigation is not appropriate under Rule 12(b)(1) or 12(b)(6).

### III.  Rule 12(b)(6) Motion

#### A.  Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

**Memorandum Opinion and Order – Page 9**

The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B. The Parties' Contentions

Relief Defendants assert as follows in support of their contention that they should be dismissed from this action under Rule 12(b)(6):[5]

- In March 2023, the SEC filed a Complaint against McKnight and the other Defendants for allegedly defrauding investors ("Complaint"). ECF No. 1. The Complaint does not name AVP or Neher as Defendants nor accuse them of violating any law. Further, . . . the Complaint appears to allege that McKnight caused non-party CGE to pay Relief Defendants in exchange for operating a trading program. Compl. at ¶ 70. But the Complaint does not—because it cannot—allege that Relief Defendants did not provide consideration in the form of commensurate services in exchange for the funds.

- The Complaint alleges that McKnight and six other Defendants defrauded investors through a series of fraudulent schemes through which, the SEC alleges, Defendants raised approximately $8.4 million from investors. The SEC identifies AVP and Neher not as named Defendants but as nominal Relief Defendants for their receipt of $750,000 from non-party CGE Group ("CGE"), which allegedly was proceeds from or traceable to Defendants' alleged fraud, albeit unbeknownst to Relief Defendants. Appropriately, the SEC does not allege that Relief Defendants committed any wrongdoing or had any knowledge of the alleged fraud. In fact, the 47-page Complaint mentions Relief Defendants in only five of its 155 paragraphs.

---

[5] As noted, these contentions overlap with Relief Defendants' jurisdictional ground for dismissal under Rule 12(b)(1).

- A relief defendant is typically a trustee or agent that is joined solely as a means of facilitating collection of funds the relief defendant is holding for a named defendant. Here, Relief Defendants acknowledge receipt of $750,000 from CGE to which they had and continue to have a legitimate claim, as they received the funds as compensation in exchange for services performed. As a result, the [c]ourt lacks subject matter jurisdiction as to Relief Defendants, and the Complaint against them should be dismissed. Dismissal is also warranted because the SEC fails to allege facts necessary to sustain a claim against Relief Defendants. Specifically, the Complaint fails to allege that Relief Defendants do not have a legitimate claim to the funds they received from CGE. The SEC's failure to provide any detail about Relief Defendants' alleged lack of legitimate claim to the funds is fatal to its claim against Relief Defendants for disgorgement.

Doc. 66 at 2-3.

Relief Defendants, therefore, argue that they should be dismissed from this action because the SEC does not allege that they lack a legitimate claim to the funds entitling as required to support equitable relief in the form of disgorgement of such funds. In addition, Relief Defendants contend that dismissal is appropriate because the Supreme Court's opinion in *SEC v Liu*, 591 U.S. 71, 86 (2020), precludes the SEC from obtaining disgorgement from them. Relief Defendants further assert that, because "there has not been a finding of culpability by [them], nor will there be as no cause of action is asserted against them . . . , they cannot be ordered to disgorge." Doc. 66 at 11.

The SEC disagrees and counters that:

> Relief Defendants incorrectly argue that the Complaint fails to allege plausibly that they lack a legitimate ownership interest in the funds. Contrary to their arguments, the Complaint sufficiently alleges that McKnight (through an entity he controlled) sent ill-gotten gains to Relief Defendants. The Complaint further alleges that[,] although this transfer was sent as an investment in a purported trading program organized by Relief Defendants, they spent the money on non-investment purposes and endeavors including travel expenses, fancy restaurants, and other entertainment.

Doc. 72 at 2. The SEC contends that these and the other allegations in its Complaint are sufficient at this stage of the litigation to support its request for disgorgement and the requirement that Relief Defendants lack a legitimate interest in the funds. The SEC further contends that, while Relief Defendants may contest these factual allegations at a later stage in the litigation, the allegations in

**Memorandum Opinion and Order – Page 11**

its Complaint should be accepted as true for the purposes ruling on the Motion. Additionally, the SEC notes, that, to the extent the Relief Defendants contend that they returned a portion of the $750,000, this contention only forms the basis for a potential affirmative defense and would only be relevant to the amount the SEC is ultimately entitled to recover from them, not whether it is appropriate to treat them as relief defendants in this action.

The SEC also takes issue with Relief Defendants' disgorgement argument based on *Liu*. In this regard, the SEC asserts that "*Liu* focused on disgorgement of profit from primary wrongdoers," not relief defendants. Doc. 72 at 24 (citations omitted). The SEC contends that, because "a relief defendant is not required to disgorge profits, but instead only funds not received in exchange for consideration," this provides relief defendants in proceedings such as this with stronger protection because they need not disgorge any funds to which they have a "legitimate claim." *Id.* (citing *Liu* and other cases). The SEC further contends that Relief Defendants' Motion "should . . . be denied, or, at minimum, [it] should be permitted to develop the factual record [through discovery] with respect to . . . whether Relief Defendants provided consideration in the form of commensurate services in exchange for the funds." *Id.*

### C.     Discussion

The resolution of the issues raised by AVP and Mr. Neher turns on their status as relief defendants in this case. A "relief defendant" or a "nominal defendant" is someone who received ill-gotten funds from a securities law violator but is not accused of any wrongdoing. *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 91-92 (4th Cir. 2002). Although a relief defendant is not accused of wrongdoing, a federal court may still order equitable relief with respect to such a defendant when the defendant "(1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009) (citing *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)).

In *Janvey*, the Fifth Circuit explained the reasoning justifying such relief against a relief or nominal defendant.

> A relief defendant, sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief. *SEC v. Cavanagh*, 445 F.3d 105, 109 n. 7 (2d Cir. 2006).
> . . .
> The court in *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir. 2002), discussed the theory behind this "obscure common law concept":
>
>> A "nominal defendant" is a person who can be joined to aid the recovery of relief without an additional assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation. Because a nominal defendant has no ownership interest in the funds at issue, once the district court has acquired subject matter jurisdiction over the litigation regarding the conduct that produced the funds, it is not necessary for the court to separately obtain subject matter jurisdiction over the claim to the funds held by the nominal defendant; rather, the nominal defendant is joined purely as a means of facilitating collection. In short, a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant.

*Janvey*, 588 F.3d at 834 (quoting *Kimberlynn Creek Ranch*, 276 F.3d at 191-92 (citations and quotation marks omitted)). The foregoing discussion regarding a court's subject matter jurisdiction over the funds of a nominal defendant undermines Relief Defendants' jurisdictional argument. Regardless, Relief Defendants' jurisdictional argument also fails when the court considers the facial validity of the SEC's Complaint and Relief Defendants' legal argument based on *Liu*.

In their Motion, AVP and Mr. Neher contend that the SEC's pleadings fail to satisfy the first requirement for relief defendant status—receipt of ill-gotten funds. They also instead contend that, even accepting the allegations in the SEC's Complaint as true, the Complaint does not contain sufficient factual allegations regarding the second requirement—that they do not have a legitimate claim to those funds. Regarding the second requirement, AVP and Mr. Neher argue that "the

Complaint contains no allegations that . . . [they] gave no consideration for the allegedly ill-gotten funds, did not perform services in exchange for the funds, or that the funds were a gift."

In *Janvey*, the Fifth Circuit concluded that an "ownership interest" is all that is required "to preclude an entity from being a proper relief defendant." *Janvey*, 588 F.3d at 834 (citing *Kimberlynn Creek Ranch*, 276 F.3d at 191; [6] *SEC v. Cherif,* 933 F.2d 403, 414 (7th Cir. 1991); and *SEC v. Founding Partners Capital Mgmt.*, 639 F. Supp.2d 1291, 1294 (M.D. Fla. 2009)). In *Janvey*, the court held that creditors whose loans were repaid by the relief defendant in that SEC enforcement action had a sufficient legitimate ownership of the funds to preclude being treated as relief defendants). Other courts have also concluded that, "in the securities context, to have no 'legitimate claim' to the funds in question means that "an individual gave no consideration for the ill-gotten funds and thus received them as a gift." *SEC v. Natural Diamonds Inv. Co.*, No. 19-CV-80633, 2019 WL 2583863, at * 7 (S.D. Fla. June 11, 2019) (citing *SEC v. Cavanagh*, 155 F.3d 129, 137 (2d Cir. 1998)); *see also SEC v. Sanchez-Diaz*, 88 F.4th 81, 89 (1st Cir. 2023) ("To possess a legitimate claim to ill-gotten funds, a relief defendant must provide something of value in exchange."); *CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) ("[R]elief defendants who have provided some form of valuable consideration in good faith in return for proceeds of fraud are beyond the reach of the district court's disgorgement remedy.") (citing *Janvey*, 588 F.3d at 834-35).

The court agrees with the SEC that its Complaint sufficiently alleges that McKnight defrauded Property Investors out hundreds of thousands of dollars via his HYIP Scheme and transferred $750,000 of the funds from this fraudulent scheme to Relief Defendants via CGE, an

---

[6] In *Kimberlynn Creek Ranch*, the court concluded that "receipt of funds as payment for services rendered to an employer constitutes one type of ownership interest that would preclude proceeding against the holder of the funds as a [relief] defendant."

entity he controlled. Such allegations satisfy the first requirement—that Relief Defendants received ill-gotten gains from McKnight's HYIP Scheme. The court can also plausibly and reasonably infer from paragraph 70 of Complaint, particularly when read in the context of the entire Complaint, that Relief Defendants do not have a legitimate claim to the $750,000 given the SEC's allegations: that McKnight used CGE to transfer the funds, the same entity used by McKnight to facilitate the HYIP Scheme, to Relief Defendants; that the funds were provided to Relief Defendants "as an investment in a purported trading program that appears to have been remarkably similar to the one peddled by McKnight"; that Mr. Neher "spent this money on non-investment endeavors, including travel expenses, fancy restaurants, and other entertainment"; that AVP and Mr. Neher "never paid CGE any profits," and "[n]one of the $750,000 principal investment was ever returned to CGE." Doc. 1 at 19. Specifically, the court can reasonably infer from these allegations that Relief Defendants did not receive the $750,000 in good faith in exchange for something of value because they used the funds on personal noninvestment endeavors and never paid CGE or Mr. McKnight any profits for the alleged investment.[7]

Additionally, given the lack of any investment profits paid and the alleged similarity between this investment by CGE with Relief Defendants and the fraudulent scheme Mr. McKnight

---

[7] Relief Defendants argue in their reply that the SEC's allegations regarding their alleged misspending of funds on noninvestment endeavors suggest wrongdoing on their part without satisfying the heightened pleading standard under Federal Rule of Civil Procedure 9(b). For similar reasons, Relief Defendants continue to argue in their reply that *Liu* is applicable because, by focusing on how funds were spent, the SEC is implying that they engaged in wrongdoing. Relief Defendants do not cite any legal authority that supports their argument regarding the applicability of Rule 9(b), and the court was unable to find any. Instead, the handful of district court opinions located by the court that have addressed this issue have concluded that Rule 9(b) does not apply to requests for equitable disgorgement against a relief defendant because relief defendants are not accused of any wrongdoing to which Rule 9(b) would normally apply. *See, e.g., SEC v. Merrill*, No. CV RDB-18-2844, 2021 WL 3022696, at *4 (D. Md. July 16, 2021) (citing *Kimberlynn Creek Ranch, Inc.*, 276 F.3d at 192); *SEC v. Dalius*, No. CV 18-08497-CJC(EX), 2019 WL 13178869, at *10 (C.D. Cal. Sept. 12, 2019) ("Because fraud is not an essential element of the SEC's disgorgement claims, these claims are subject to Rules 8 and 12(b)(6) and not the heightened pleading standard of Rule 9(b).") (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). Moreover, as the SEC has not alleged that Relief Defendants participated in the securities fraud or asserted any securities fraud claims against them in its Complaint, the court only considers the allegations regarding the manner in which Relief Defendants used the funds on noninvestment endeavors in the context of determining the adequacy of the SEC's disgorgement allegations regarding their legitimate interest in some or all of the funds they received from CGE.

conducted involving investments in trading programs, the court can also reasonably infer that no such investment or trading program actually existed.

Moreover, Relief Defendants' argument based on *Liu* is misplaced for many of the reasons urged by the SEC. In particular, *Liu* did not involve a relief defendant who was innocent of securities fraud; rather, it involved a husband and wife who engaged in securities fraud. *See Liu*, 591 U.S. at 91. Thus, *Liu* in no way changes the determination and analysis of whether a relief defendant has a "legitimate interest" in ill-gotten funds.

Accordingly, after considering Relief Defendants' Motion, the parties' briefs, the pleadings, and applicable law, the court determines that Relief Defendants' Motion (Doc. 66) should be and is hereby **denied.** The dismissal of Relief Defendants from this action and the SEC's request for disgorgement against them is not warranted, as the allegations in the SEC's Complaint are sufficient to satisfy *Twombly*'s facial plausibility test, and it is not appropriate at this time in the context of a motion to dismiss either under Rule 12(b)(1) or 12(b)(6) for the court to resolve factual disputes with respect to whether Relief Defendants have a legitimate interest in some of all of the funds they received from CGE. After the parties finish conducting discovery, and before any order of disgorgement is entered, Relief Defendants will have the opportunity to present evidence to support their contention that they have a legitimate interest to some or all of the funds in question.

### III.     Conclusion

For the reasons discussed, the court determines that dismissal of Relief Defendants and the SEC's request for disgorgement against them is not warranted under Rules 12(b)(1) or 12(b)(6) given the adequacy of the SEC's pleadings and the factual disputes that exist. The court, therefore, **denies** Relief Defendants' Motion under Rules 12(b)(1) and 12(b)(6) (Doc. 66).

**It is so ordered** the 10th day of March, 2025.

_____
Sam A. Lindsay
United States District Judge